# HARRY EBERHART ET AL. *v.* MEADOW HAVEN, INC.
## (AC 29173)

DiPentima, McLachlan and Lavine, Js.

Argued September 24—officially released December 16, 2008

*Genevieve P. Salvatore*, for the appellant (defendant).

*Vincent T. McManus, Jr.*, for the appellees (plaintiffs).

*Opinion*

DiPENTIMA, J. The defendant, Meadow Haven, Inc., appeals from the judgment of the trial court rendered in favor of the plaintiffs, Harry Eberhart and Adele Eberhart. On appeal, the defendant claims that the court improperly (1) concluded that the plaintiffs had established legal title to the disputed property by adverse possession, (2) shifted the burden of proof to the defendant by resolving the issue of consent as a defense raised by the defendant rather than as an element of adverse possession to be proven by the plaintiffs by clear and convincing evidence and (3) failed to conclude that a grantor-grantee relationship between the parties

defeated the plaintiffs' claim of adverse possession. We disagree and, accordingly, affirm the judgment of the trial court.

This case involves a dispute over the ownership of land under a driveway. The defendant conveyed a parcel of land described as lot seven to the plaintiffs by warranty deed dated October 5, 1966. Lot seven is located in a subdivision of approximately thirty lots in Meriden. It sits on the corner of Sandy Lane, a public way, and Shaker Court, an unpaved right-of-way. After the conveyance, the plaintiffs moved into the single-family residential house located on lot seven and began using the appurtenant driveway, installed by the defendant, which connected the house with Sandy Lane. There are two areas in dispute. The first, described as parcel B, is comprised of a portion of the driveway that is not located on lot seven but runs for a significant distance on the abutting piece of land, between lot seven and Shaker Court. The second, described as parcel D, also is comprised of a portion of the driveway that is not located on lot seven but runs onto Shaker Court. The defendant is the title owner of both parcel B and parcel D.

The plaintiffs' amended complaint, dated February 21, 2006, sought a declaratory judgment that they are the legal owners of parcels B and D by operation of the doctrine of adverse possession. In its answer, the defendant denied that the plaintiffs had established the elements of adverse possession and asserted a special defense, stating that to the extent that the plaintiffs used or occupied the land, particularly parcel D, it was done with a license from or the consent of the defendant. Following a two day trial to the court, the court issued a memorandum of decision in which it found that the plaintiffs had presented clear and convincing evidence in support of their claim of ownership by adverse possession and rendered judgment declaring

the plaintiffs to be the legal owners of parcels B and D. The court also found against the defendant on its special defense, stating in its memorandum that no license to use the property had existed. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly concluded that the plaintiffs had established legal title to the disputed property by adverse possession. Specifically, the defendant argues that the court improperly determined that the plaintiffs' use of the disputed property was exclusive, under a claim of right and without the consent of the defendant, and that the plaintiffs adversely possessed the disputed property for the requisite time period of fifteen years. The defendant also argues that the court's failure to find that the plaintiffs "ousted" the defendant for the requisite time period is fatal to a finding of adverse possession and that the plaintiffs did not present clear and convincing evidence of each of the elements of adverse possession sufficient to establish their claim. We address each of the defendant's claims in turn.

The following additional facts are relevant. In 1967, one year after the plaintiffs purchased lot seven from the defendant, a city worker informed them that the driveway connecting their house with Sandy Lane was not located on lot seven but, instead, was comprised of a substantial portion of the abutting lot, parcel B. The plaintiffs informed Joseph Carabetta, a principal in the defendant corporation, of the problem, and he assured them that he would "take care of it." Carabetta commissioned a survey of the land and subsequently resubdivided parcel B with the intention of moving the plaintiffs' property line to encompass the driveway. A deed reflecting the enlargement of lot seven as a result of the resubdivision was not filed in the land records,

and, therefore, the revised subdivision never went into effect. The plaintiffs relied on Carabetta's representation, made on two separate occasions, that the problem had been fixed. The plaintiffs had exclusive use of the driveway as the sole means of ingress and egress between their garage and Sandy Lane. Over time, the plaintiffs planted and maintained a hedge that runs the length of the disputed area of the driveway, installed and maintained light posts and planters and maintained the driveway and lawn.

We first identify our standard of review and the applicable legal principles. "[T]o establish title by adverse possession, the claimant must oust an owner of possession and keep such owner out without interruption for fifteen years by an open, visible and exclusive possession under a claim of right with the intent to use the property as his [or her] own and without the consent of the owner." (Internal quotation marks omitted.) *Schlichting* v. *Cotter*, 109 Conn. App. 361, 364–65, 952 A.2d 73, cert. denied, 289 Conn. 944, 959 A.2d 1009 (2008); see also General Statutes § 52-575. "A finding of [a]dverse possession is not to be made out by inference, but by clear and positive proof. . . . [C]lear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist. . . . The burden of proof is on the party claiming adverse possession." (Citation omitted; internal quotation marks omitted.) *Eberhardt* v. *Imperial Construction Services, LLC*, 101 Conn. App. 762, 767, 923 A.2d 785, cert. denied, 284 Conn. 904, 931 A.2d 263 (2007).

"Despite [this] exacting standard, our scope of review is limited. . . . Because adverse possession is a question of fact for the trier . . . the court's findings as to this claim are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . . A trial court's findings in an adverse possession case, if supported by sufficient evidence, are binding on a reviewing court . . . ." (Citation omitted; internal quotation marks omitted.) *Mulle* v. *McCauley*, 102 Conn. App. 803, 809, 927 A.2d 921, cert. denied, 284 Conn. 907, 931 A.2d 265 (2007). With these principles in mind, we turn to the defendant's claims on appeal.

The defendant contends that the court improperly determined that the plaintiffs' use of the disputed property was exclusive. In support of its argument, the defendant relies primarily on the fact that there is a telephone pole located on parcel D, in the middle of the hedge installed and maintained by the plaintiffs. We are not persuaded.

Our Supreme Court has explained that "[i]n general, exclusive possession can be established by acts, which at the time, considering the state of the land, comport with ownership; viz., such acts as would ordinarily be exercised by an owner in appropriating land to his own use and the exclusion of others. . . . Thus, the claimant's possession need not be absolutely exclusive; it need only be a type of possession which would characterize an owner's use. . . . It is sufficient if the acts of ownership are of such a character as to openly and publicly indicate an assumed control or use such as is

consistent with the character of the premises in question." (Citations omitted; internal quotation marks omitted.) *Roche* v. *Fairfield*, 186 Conn. 490, 502–503, 442 A.2d 911 (1982); *Mulle* v. *McCauley*, supra, 102 Conn. App. 817; 16 R. Powell, Real Property (2007) § 91.06.

The record reflects, and the court found, that from the time the plaintiffs purchased lot seven in 1966 and began using the disputed property, they (1) planted and maintained hedges and trees, (2) maintained the lawn, (3) installed lamp posts and a flag pole and (4) used the driveway exclusively, with the exception of invited guests. These activities are consistent with open acts of ownership by the plaintiffs.

We are not persuaded by the defendant's argument that the placement of a telephone pole on the disputed property is fatal to establishing exclusivity. As we noted previously, "the claimant's possession need not be absolutely exclusive; *it need only be a type of possession which would characterize an owner's use.*" (Emphasis added; internal quotation marks omitted.) *Roche* v. *Fairfield*, supra, 186 Conn. 502; see also *Boccanfuso* v. *Conner*, 89 Conn. App. 260, 289 n.23, 873 A.2d 208 ("[i]n adverse-possession doctrine, the exclusivity requirement describes the behavior of an ordinary possessor and serves to give notice to the owner" [internal quotation marks omitted]), cert. denied, 275 Conn. 905, 882 A.2d 668 (2005). The placement of a public utility pole on the disputed property does not negate more than fifteen years of behavior, on the part of the plaintiffs, that the owner of property ordinarily undertakes. After reviewing the record, we conclude that the court's findings were logically and legally consistent with the evidence before the court, and therefore not clearly erroneous.

The defendant next claims that the court improperly determined that the plaintiffs' use of the disputed property was under a claim of right because there is no

evidence to support such a finding. The defendant finds fault with the court's reasoning in its memorandum of decision that "[w]hen the [plaintiffs] purchased their house, it was in full accord with a claim to the driveway as their own with the intention to hold it for the period that they owned the house." We are not persuaded that this finding was clearly erroneous.

"Possession under a claim of right means that the entry by the claimant must be in accordance with a claim to the property as the claimant's own with the intent to hold it for the entire statutory period without interruption." 16 R. Powell, supra, § 91.05 [4]. Here, the court found that the plaintiffs had used the property as their own. Evidence supporting this finding included testimony that the plaintiffs maintained a manicured lawn and installed lights and a flag pole, as well as trees and shrubbery. The plaintiffs planted and maintained hedges, shoveled snow from the driveway and believed that the driveway was part of the purchased lot. The court's conclusion that the plaintiffs established that their use of the disputed property was under a claim of right was not clearly erroneous, as it is adequately supported by the evidence.

The defendant next claims that the court improperly found that the plaintiffs used the disputed property without the consent of the defendant. In support of its argument, the defendant states that at trial, it "was unequivocal that [the] plaintiffs' use of the [d]isputed [a]rea was solely pursuant to [the] defendant's permission . . . ." We disagree.

At trial, Harry Eberhart testified that he never received Carabetta's permission or consent to use the driveway. In contrast, Carabetta testified that there was a consensual agreement that the plaintiffs could use the disputed property. Here, the court was faced with

conflicting evidence. It is well established that evaluating witness' credibility is the exclusive function of the trier of fact. *Goldstar Medical Services, Inc.* v. *Dept. of Social Services,* 288 Conn. 790, 830, 955 A.2d 15 (2008). "Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) Id. Accordingly, in choosing to credit the testimony of Harry Eberhart over that of Carabetta, the court acted well within its province. The defendant, in citing Carabetta's testimony, essentially urges us to reevaluate the conflicting testimony, which we cannot do. *Boccanfuso* v. *Conner,* supra, 89 Conn. App. 292. Therefore, we conclude that the court's finding was not clearly erroneous.

The defendant next claims that the court did not find that the plaintiffs "ousted" the defendant from possession of the disputed property and that such a finding is a necessary element of a claim of adverse possession. The defendant argues, without citation to legal authority or analysis, that "[i]n order to meet the first requirement for adverse possession, it must be demonstrated, and found by the court, that the purported adverse possessor 'ousted' the true owner from possession." The defendant further states that "based on the evidence adduced at trial, [the court] could make no such finding." We disagree.

Our Supreme Court has defined ouster clearly. "By ouster is not meant a physical eviction, but a possession attended with such circumstances as to evince a claim of exclusive right and title . . . . As otherwise stated: [a]n entry . . . on the land of another, is an ouster of the legal possession arising from the title . . . if made

under claim and color of right . . . otherwise it is a mere trespass. . . . The intention guides the entry, and fixes its character." (Internal quotation marks omitted.) *Lucas* v. *Crofoot*, 95 Conn. 619, 623–24, 112 A. 165 (1921); see also *Boccanfuso* v. *Green*, 91 Conn. App. 296, 313–14, 880 A.2d 889 (2005); Black's Law Dictionary (7th Ed. 1999) (ouster defined as "[t]he wrongful dispossession or exclusion of someone . . . from property").

"Again, the question of whether the elements of an adverse possession claim have been established by clear and convincing evidence is a factual one subject to the clearly erroneous standard of review." (Internal quotation marks omitted.) *Mulle* v. *McCauley*, supra, 102 Conn. App. 817. In its memorandum of decision, the court noted that the plaintiffs exclusively possessed the disputed property and used the property as their own. The court further found that the plaintiffs possessed the disputed property under a claim of right. Although the court did not make a specific finding using the term "ouster," the court did find that the plaintiffs had "possession [of the disputed property] attended with such circumstances as to evince a claim of exclusive right and title." (Internal quotation marks omitted.) *Lucas* v. *Crofoot*, supra, 95 Conn. 624. Accordingly, we reject the defendant's claim.

Similarly, the defendant claims that the court improperly found that the plaintiffs were in possession of the disputed property for the requisite fifteen years. We disagree.

As discussed previously, the court's finding that the plaintiffs used the disputed property as their own beginning in 1966 was amply supported by the testimony before the court. As almost forty years had passed between 1966 and the time of litigation, the fifteen year requirement for adverse possession was easily satisfied in this case. See General Statutes § 52-575 (fifteen year

statute of limitations for claim of adverse possession). The defendant urges us to conclude that the plaintiffs acknowledged the defendant's ownership of the disputed property, and, as a result, their use was not hostile and therefore insufficient to commence the statute of limitations. As the court found, however, the plaintiffs learned that the driveway was not located on lot seven but were told by the defendant that a resubdivision of the adjacent lot had "fixed the problem." "[A] claimant's mistaken belief that he owned the property at issue is immaterial in an action for title by adverse possession, as long as the other elements of adverse possession have been established." (Internal quotation marks omitted.) *Durkin Village Plainville, LLC* v. *Cunningham*, 97 Conn. App. 640, 653, 905 A.2d 1256 (2006); see also 16 R. Powell, supra, § 91.05 [3] (majority rule is that mistaken belief as to boundary does not bar claim of right or negate essential element of hostility). Thus, the court's finding that the plaintiffs adversely possessed the disputed property was not clearly erroneous.

The defendant further argues that the plaintiffs failed to establish each element of adverse possession by clear and convincing evidence. In light of our analysis of the defendant's other claims, we disagree. The court did not err in finding each of the elements of adverse possession by clear and convincing evidence.

## II

The defendant's second claim is that the court improperly shifted the burden of proof to the defendant by resolving the issue of consent as a defense raised by the defendant rather than as an element of adverse possession to be proven by the plaintiffs by clear and convincing evidence.

The following additional procedural history is relevant to the resolution of the defendant's claim. In its answer to the plaintiffs' complaint, the defendant

alleged a special defense in which it claimed that "to the extent that [the] plaintiffs have used or occupied a portion of the said parcels, particularly parcel 'D', they have done so by way of license and/or consent of [the] defendant." In its claim that the court improperly required the defendant to prove that consent existed, the defendant appears to rely on the fact that "[d]efense of license/consent" is addressed in a separate subsection of the memorandum of decision.

"The construction of a judgment is a question of law with the determinative factor being the intent of the court as gathered from all parts of the judgment. . . . As a general rule, the court should construe [a] judgment as it would construe any document or written contract in evidence before it. . . . Effect must be given to that which is clearly implied as well as to that which is expressed." (Internal quotation marks omitted.) *Moasser* v. *Becker*, 107 Conn. App. 130, 135, 946 A.2d 230 (2008); see *Rudder* v. *Mamanasco Lake Park Assn., Inc.*, 93 Conn. App. 759, 773–74, 890 A.2d 645 (2006). In its memorandum of decision, the court listed use "under a claim of right without the owner's consent" as the final element of adverse possession and noted that "[t]he standard of proof required in a claim for adverse possession is clear and convincing." In concluding its memorandum, the court wrote: "For the foregoing reasons the court finds that the plaintiffs . . . have presented clear and convincing evidence supporting their claim for ownership by adverse possession." In construing the judgment, we conclude that the court did not improperly shift the burden of proof on the issue of consent to the defendant but, rather, correctly placed it squarely on the plaintiffs.

### III

The defendant's third and final claim is that the court improperly failed to conclude that a grantor-grantee

relationship between the parties defeated the plaintiffs' claim of adverse possession. Specifically, the defendant argues that under this court's decision in *Woodhouse* v. *McKee*, 90 Conn. App. 662, 879 A.2d 486 (2005), the plaintiffs were required to make an "explicit disclaimer of the subservient relation of a grantor to a grantee . . . ." (Internal quotation marks omitted.) Id., 674. We disagree.

As noted previously, "[b]ecause adverse possession is a question of fact for the trier . . . the court's findings as to this claim are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole." (Internal quotation marks omitted.) *Porter* v. *Morrill*, 108 Conn. App. 652, 666, 949 A.2d 526, cert. denied, 289 Conn. 921, 958 A.2d 152 (2008).

In *Woodhouse* v. *McKee*, supra, 90 Conn. App. 676, this court determined that the trial court improperly had found that the plaintiffs had obtained the disputed property by adverse possession because the court did not "consider the relevance of the initial grantor-grantee or parent-child familial use of the disputed property." In its discussion of the grantor-grantee aspect of the parties' relationship, this court, quoting 3 Am. Jur. 2d 124, Adverse Possession § 195 (2002), stated: "[A] grantor may, by adverse possession, acquire title to land which the grantor has conveyed . . . [but the] hostility of the grantor's holding must be brought to the grantee's attention in such manner as to put the latter on notice of the grantor's intention to occupy the property in the grantor's own right. Nothing short of an explicit disclaimer of the subservient relation of a grantor to a grantee and a notorious assertion of right in the grantor will be sufficient to change the character of the grantor's possession and render it adverse to the grantee." (Internal quotation marks omitted.) *Woodhouse* v. *McKee*, supra, 673–74.

In the present matter, the disputed parcels were never transferred by the defendant to the plaintiffs. Indeed, the fact that the driveway, which comprises much of the disputed parcels, was not located on the land the plaintiffs had purchased from the defendant formed the impetus for this litigation. Because the parties do not share a grantor-grantee relationship as to the disputed parcels, the analysis in *Woodhouse* is inapplicable here. Additionally, in *Woodhouse*, the plaintiff-grantor claimed ownership of property it had previously conveyed to the defendant-grantee. Id., 673 ("a grantor may, by adverse possession, acquire title to land *which the grantor has conveyed*" [emphasis added; internal quotation marks omitted]). Here, in contrast, the plaintiffs were the grantees of land, although as noted previously, that land did not include the disputed area. The present matter does not involve a circumstance, where, as in *Woodhouse*, a grantor was seeking to reclaim possession by adverse possession to property previously conveyed to a grantee. Accordingly, the defendant's third claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.