******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

MICHAEL J. FIONDELLA, JR., TRUSTEE, ET AL.
*v.* CITY OF MERIDEN ET AL.
(AC 40813)

DiPentima, C. J., and Lavine and Harper, Js.

*Syllabus*

The plaintiffs, owners of certain real property in a subdivision in Meriden, brought this action against the defendants A and H, owners of real property in the subdivision, and their attorney, M, alleging claims for, inter alia, fraud and civil conspiracy, and seeking injunctive and declaratory relief, as well as monetary damages. In 2004, A and H, represented by M, had brought a declaratory judgment action asserting adverse possession of certain land in the subdivision that comprised portions of a driveway that was adjacent to their home but was located on abutting land. The trial court rendered judgment in favor of A and H in that action, finding that they had acquired title to the disputed portions of the driveway by way of adverse possession, and this court affirmed the trial court's judgment. Thereafter, the plaintiffs, certain abutting landowners in the subdivision, commenced the present action, claiming that the defendants had failed to give them notice of the declaratory judgment action, as required by the applicable rule of practice (§ 17-56 [b]), and conspired and schemed to conceal the declaratory judgment action from the plaintiffs. The defendants subsequently filed a motion to dismiss for lack of subject matter jurisdiction, claiming that the alleged wrongful conduct was shielded by the litigation privilege. The trial court granted the motion to dismiss and rendered judgment thereon, from which the plaintiffs appealed to this court. *Held* that the trial court improperly granted the defendants' motion to dismiss and applied the litigation privilege in favor of the defendants to conclude that it lacked subject matter jurisdiction; because the primary allegation of fraud in the plaintiffs' complaint concerned the defendants' intentional and wrongful conduct in depriving the plaintiffs of notice of the declaratory action and concealing that action, which did not occur during a judicial proceeding or involve the defendants' conduct or statements made during a judicial proceeding, the defendants were not shielded by the litigation privilege, and, therefore, the trial court was not without subject matter jurisdiction.

Argued October 9—officially released December 11, 2018

*Procedural History*

Action seeking damages for, inter alia, fraud, and seeking declaratory and injunctive relief, brought to the Superior Court in the judicial district of New Haven at Meriden, where the court, *Hon. John F. Cronan*, judge trial referee, granted the motion to dismiss filed by the defendant Adele G. Eberhart et al., and rendered judgment thereon, from which the plaintiffs appealed to this court. *Reversed; further proceedings.*

*Dominic J. Aprile*, for the appellants (plaintiffs).

*Vincent T. McManus, Jr.*, for the appellees (defendant Adele G. Eberhart et al.).

*Opinion*

LAVINE, J. The plaintiffs, Michael J. Fiondella, Jr., trustee of the Jo-An Carabetta 1983 Irrevocable Trust (trust), and The Meriden Homestead, LLC, appeal from the judgment of the trial court dismissing the counts of the complaint alleged against the defendants, Adele G. Eberhart, Harry S. Eberhart, and Vincent T. McManus, Jr.[1] On appeal, the plaintiffs claim that the court improperly (1) applied the litigation privilege in favor of the defendants to conclude that it lacked subject matter jurisdiction and (2) construed the fraud and civil conspiracy allegations against the defendants. We agree that the court improperly applied the litigation privilege to determine that it lacked subject matter jurisdiction. We, therefore, reverse the judgment of the trial court.[2]

The historical facts underlying the present appeal were set out in *Eberhart* v. *Meadow Haven, Inc.*, 111 Conn. App. 636, 960 A.2d 1083 (2008), a declaratory judgment action in which the Eberharts sought to obtain ownership of certain land by means of adverse possession. Id., 638. The land at issue lies under a driveway adjacent to their home in the Shaker Court subdivision (subdivision) in Meriden. Id. On October 5, 1966, Meadow Haven, Inc. (Meadow Haven), conveyed lot seven in the subdivision to the Eberharts. Id. Lot seven is one of thirty lots in the subdivision and sits on the corner of Sandy Lane, a public way, and Shaker Court, an unpaved right-of-way. Id. When the Eberharts moved into their home on lot seven, they used the driveway that Meadow Haven had installed to reach Sandy Lane. Id.

The Eberharts later learned that the driveway was not located on lot seven but on an abutting lot. Id., 639. The Eberharts informed Joseph Carabetta, a Meadow Haven principal, who had the land surveyed. He then resubdivided the abutting lot to move the Eberharts' property line to encompass the driveway. A deed reflecting the enlargement of lot seven, however, never was filed in the land records. Id. The revised subdivision, therefore, never went into effect, but the Eberharts relied on Carabetta's representations that the "problem had been fixed." Id., 640. The Eberharts made exclusive use of the driveway, planted a hedge, installed light posts and planters, and maintained the driveway and lawn over the disputed area. Id.

In 2004, the Eberharts commenced an action seeking a declaratory judgment that they were the legal owners of the land under the driveway by operation of the doctrine of adverse possession. Following a trial, the court, *Jones, J.*, found by clear and convincing evidence that the Eberharts were the owners of the subject parcels by adverse possession and rendered a declaratory judgment in their favor. Id., 638–39. Meadow Haven appealed, and this court affirmed the declaratory judgment. Id., 649.

On July 7, 2016, the plaintiffs commenced the present action alleging claims for fraud, slander of title, and civil conspiracy. Specifically, the plaintiffs alleged that they were owners of certain lots in the subdivision, that the defendants failed to give them notice of the declaratory judgment action, and that they only recently had learned of the declaratory judgment. On December 5, 2016, the defendants filed a motion to dismiss the present action on the ground that the court lacked subject matter jurisdiction because the litigation privilege shielded them from the claims alleged by the plaintiffs.[3] The plaintiffs filed an opposition to the motion to dismiss, arguing that the defendants were not protected by the litigation privilege because the allegations of the complaint were not predicated on statements made in the course of a declaratory judgment action but on the defendants' intentional conduct to conspire and conceal the declaratory judgment action from them.

The motion to dismiss was heard at short calendar on May 25, 2017. The court, *Hon. John F. Cronan*, judge trial referee, issued a memorandum of decision on August 18, 2017, granting the defendants' motion on the ground that the litigation privilege shielded the defendants from the plaintiffs' claims.[4] The plaintiffs appealed, claiming, in essence, that the court improperly granted the defendants' motion to dismiss pursuant to the litigation privilege. We agree.

"The standard of review for a court's decision on a motion to dismiss . . . is well settled. A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts, which are well pleaded, invokes the existing record and must be decided upon that alone. . . . In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Citations omitted; internal quotation marks omitted.) *Dayner* v. *Archdiocese of Hartford*, 301 Conn. 759, 774, 23 A.3d 1192 (2011).

We begin with a review of the law regarding the litigation privilege. "The litigation privilege developed centuries ago in the context of defamation claims. See *Simms* v. *Seaman*, 308 Conn. 523, 531, 69 A.3d 880 (2013). The privilege evolved, in part, to protect lawyers

from civil actions for words spoken during the course of legal proceedings. . . . Absolute immunity for defamatory *statements* made in the course of judicial proceedings has been recognized by common-law courts for many centuries and can be traced back to medieval England. . . . The rationale articulated in the earliest privilege cases was the need to bar persons accused of crimes from suing their accusers for defamation. . . .

"Connecticut has long recognized the litigation privilege, and our Supreme Court has stated that the privilege extends to judges, counsel and witnesses participating in judicial proceedings. . . . [O]ur Supreme Court explained that the privilege was founded upon the principle that in certain cases it is advantageous for the public interest that persons should not be in any way fettered in their statements, but should speak out the whole truth, freely and fearlessly. . . .

"It is well settled that communications uttered or published in the course of judicial proceedings are absolutely privileged [as] long as they are in some way pertinent to the subject of the controversy. . . . The effect of an absolute privilege is that damages cannot be recovered for the publication of the privileged *statement* even if the statement is false and malicious." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Villages, LLC* v. *Longhi*, 166 Conn. App. 685, 699–700, 142 A.3d 1162, cert. denied, 323 Conn. 915, 149 A.3d 498 (2016).

Our Supreme Court "consistently [has] applied the doctrine of absolute immunity to defamation actions arising from judicial or quasi-judicial proceedings." *Rioux* v. *Barry*, 283 Conn. 338, 345, 927 A.2d 304 (2007). It has expanded "absolute immunity to bar retaliatory civil actions beyond claims of defamation. For example, [our Supreme Court has] concluded that absolute immunity bars claims of intentional interference with contractual or beneficial relations arising from *statements made* during a civil action. . . . [It has] also precluded claims of intentional infliction of emotional distress arising from *statements made* during judicial proceedings on the basis of absolute immunity. . . . Finally, [it] most recently applied absolute immunity to bar retaliatory claims of fraud against attorneys for their actions during litigation." (Citations omitted; emphasis added; internal quotation marks omitted.) *Bruno* v. *Travelers Cos.*, 172 Conn. App. 717, 726, 161 A.3d 630 (2017); see also *Simms* v. *Seaman*, supra, 308 Conn. 566–69 (litigation privilege afforded to any act occurring during course of judicial proceeding).

Our Supreme Court, however, has "recognized a distinction between attempting to impose liability upon a participant in a judicial proceeding for the *words used* therein and attempting to impose liability upon a litigant

for his improper use of the judicial system itself. See *DeLaurentis* v. *New Haven*, [220 Conn. 225, 263–64, 597 A.2d 807 (1991)] (whether or not a party is liable for vexatious suit in bringing an unfounded and malicious action, he is not liable for the *words used* in the pleadings and documents used to prosecute the suit . . . ). In this regard, [our Supreme Court has] refused to apply absolute immunity to causes of action alleging the improper use of the judicial system." (Emphasis altered; internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, 310 Conn. 616, 629, 79 A.3d 60 (2013).

In their brief, the plaintiffs argue that their cause of action does not arise out of statements made in the course of litigation; rather, the claims arise out of the intentional conduct of the defendants, who purposely took steps to conceal from the plaintiffs that they had commenced the declaratory judgment action.[5] The primary allegation of fraud concerns the defendants' intentional and wrongful conduct in depriving the subdivision lot owners of notice and their purposeful concealment of the actions that they knew were contrary to the property rights and interests of the lot owners.[6] In support of their position, the plaintiffs note that, pursuant to Practice Book § 17-56 (b),[7] the defendants were obligated to join them in the declaratory judgment action or to provide them with notice of its pendency. This is so, they claim, because "the notice requirement ensures that interested persons are aware of the requested declaratory relief and are able to move to intervene to protect their interests, should they choose to do so." *Batte-Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 288, 914 A.2d 996 (2007).

The plaintiffs contend that lot owners in a subdivision are required to be joined or given notice of a declaratory judgment action; see *Mannweiler* v. *LaFlamme*, 232 Conn. 27, 33, 653 A.2d 168 (1995); and that a lot owner may reasonably anticipate the use of streets disclosed on the subdivision map. See *Lucy* v. *Oram*, 114 Conn. 642, 647, 159 A. 655 (1932) (so-called *Whitton* rule: test of when lot owner, who purchases lot in development where streets are shown on plan, will be permitted to enforce right to use street, depends upon whether street is of benefit to owner). The plaintiffs' complaint alleges that the deeds to their properties reference the subdivision map that depicts access via Shaker Court.[8] On the basis of the deeds, public documents and notice requirements, the plaintiffs alleged that the defendants conspired and schemed with the city defendants to deprive them of notice of the declaratory judgment action.

The plaintiffs also argue that the trial court improperly relied on *Simms* v. *Seaman*, supra, 308 Conn. 523, and factually similar cases, in which the claim of fraud was asserted against a party opponent in prior litigation and the statement was made during the course of a

judicial proceeding. The present action is not factually similar because the plaintiffs were not parties in the declaratory judgment action and their fraud claim is not based on statements made in that action. This court has stated that the "policy and history of the [litigation] privilege lead us to conclude that [the privilege] extends to bar claims of fraud against a party opponent." *Tyler* v. *Tatoian*, 164 Conn. App. 82, 92, 137 A.3d 801, cert. denied, 321 Conn. 908, 135 A.3d 710 (2016). The fraud the plaintiffs alleged against the defendants is not asserted pursuant to prior litigation between them.

Most importantly, the plaintiffs' claims focus on the alleged wrongful *conduct* engaged in by the defendants, rather than on the words uttered during a judicial proceeding. The plaintiffs alleged that the defendants engaged in fraud by purposefully concealing the existence of the declaratory judgment action as part of a scheme and conspiracy. They argue, and we agree, that the facts of this case are somewhat similar to those of *Villages, LLC* v. *Longhi*, supra, 166 Conn. App. 685. In *Villages, LLC*, this court determined that a member of the planning and zoning commission who engaged in ex parte communications and was biased against the plaintiff, Villages, LLC, was not protected by the litigation privilege when she participated in the commission's meeting to act on that plaintiff's applications. Id., 707. In its memorandum opposing a motion to dismiss, Villages, LLC argued that "its claims are not predicated on what the defendant [commission member] *stated* at the commission meeting, but on her bias and ex parte communication . . . ." (Emphasis in original.) Id., 696. This argument is legally similar to the one made by the plaintiffs in the present case. We conclude that the allegations of the plaintiffs' complaint in the present case are not predicated on statements made during the course of litigation, but are based on the defendants' intentional conduct that did not occur during a judicial proceeding. The defendants, therefore, are not shielded by the litigation privilege.

Whether the plaintiffs will prevail on the merits of their claim is, of course, not before us at this time.[9] They have persuaded us, however, that, with respect to the claims alleged, the defendants are not protected by the litigation privilege and the court, therefore, was not without subject matter jurisdiction. The plaintiffs' claims are predicated on the defendants' alleged intentional conduct to deprive them of notice of the declaratory judgment action rather than on the defendants' conduct or statements made during a judicial proceeding. The court, therefore, improperly granted the defendants' motion to dismiss.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.

[1] McManus, an attorney, represented the Eberharts in the underlying

declaratory judgment action and in the present case. The city of Meriden, James Anderson, former city zoning enforcement officer, and Dominick Caruso, former city planner, also were served as defendants. They are not parties to this appeal, and we refer to them as the city defendants in this opinion. We refer to Adele G. Eberhart and Harry S. Eberhart jointly as the Eberharts where necessary, and to the Eberharts and McManus collectively as the defendants.

[2] Because we conclude that the trial court improperly dismissed the counts against the defendants for lack of subject matter jurisdiction, we do not reach the plaintiffs' second claim.

[3] The motion to dismiss addressed the counts alleged against the defendants, namely, counts one, two, six, seven and eight. The motion to dismiss did not address the counts alleged against the city defendants.

[4] In its memorandum of decision, the trial court stated that its decision was guided by *MacDermid, Inc.* v. *Leonetti*, 310 Conn. 616, 629–30, 79 A.3d 60 (2013) (whether and what form of immunity applies in given case is matter of policy that requires balancing of interests), and *Rioux* v. *Barry*, 283 Conn. 338, 350–51, 927 A.2d 304 (2007) (same). The court noted that the plaintiffs did not allege that the defendants had abused the judicial system and pursued litigation for an unlawful or improper purpose. In other words, the plaintiffs were not challenging the purpose of the declaratory judgment action. See *Varga* v. *Pareles*, 137 Conn. 663, 667, 81 A.2d 112 (1951) (abuse of process lies against any person using legal process against another in improper manner or to accomplish purpose for which it was not designed).

The court, however, stated that the plaintiffs' claim occurred during the course of the judicial proceedings and that the defendants' actions were shielded by the litigation privilege. The court found that the plaintiffs' slander of title claim against the defendants arose from the testimony Anderson gave at trial and that those statements were privileged. With respect to the plaintiffs' claims of civil conspiracy, the court stated that there is no independent cause of action for civil conspiracy and that to state a cause of action, a claim of civil conspiracy must be joined with allegations of a substantive tort. See *Larobina* v. *McDonald*, 274 Conn. 394, 408, 876 A.2d 522 (2005). The court reasoned that the plaintiffs' slander of title claims were the underlying actions on which civil conspiracy was based. Because the defendants were shielded by the litigation privilege with respect to the slander of title claim, the court concluded that there was no underlying tort to support the civil conspiracy claims.

We note that in ruling on a motion to dismiss, the question before the court generally is whether the court has subject matter jurisdiction. See Practice Book § 10-30. It is not to determine whether the complaint states a cause of action on which relief may be granted, which properly is raised by means of a motion to strike. See Practice Book § 10-39. "[A] motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the court. . . . We take the facts to be those alleged in the complaint . . . and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . [I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." *Larobina* v. *McDonald*, supra, 274 Conn. 400.

[5] The plaintiffs attempt to bolster their argument that the defendants sought to conceal the declaratory judgment action by bringing that prior action in the judicial district of New Haven, rather than in Meriden where the subdivision is located and the parties reside.

[6] Specifically the plaintiffs alleged: "26. As part of, and in furtherance of, their continuous scheme and conspiracy, the Defendants agreed that Defendant Anderson would provide testimony in the [declaratory judgment action], which testimony was knowingly contrary to City of Meriden records, official maps and other documents, or was in reckless disregard of the truth.

"27. As part of, and in furtherance of, their continuous scheme and conspiracy, the Defendants concealed their continuous course of conspiratorial conduct and other wrongful acts from the Plaintiffs, from the Court and from the public at large.

\* \* \*

"33. After the events recited in the foregoing paragraphs occurred, and after the Defendants achieved the goal of their conspiracy through the overt acts set forth above, the Defendants further agreed and conspired with the intent to and for the purpose of preventing Plaintiffs from discovering the true facts regarding Defendants' conduct and to prevent Plaintiffs from being able to ascertain the existence of the causes of action set forth in the

prior counts of this Complaint."

[7] Practice Book § 17-56 (b) provides in relevant part: "All persons who have an interest in the subject matter of the requested declaratory judgment that is direct, immediate and adverse to the interest of one or more of the plaintiffs or defendants in the action shall be made parties to the action or shall be given reasonable notice thereof. . . . The party seeking the declaratory judgment shall append to its complaint . . . a certificate stating that all such interested persons have been joined as parties to the action or have been given reasonable notice thereof. If notice was given, the certificate shall list the names, if known, of all such persons, the nature of their interest and the manner of notice."

[8] The complaint alleges in relevant part: "11. On April 26, 1972, lot numbers for the lots show on that certain Map No. 3372 entitled, 'Resubdivision of Country View Heights Section II Shaker Court–Meriden' dated March 27, 1972 (the 'Shaker Court Resubdivision Map'), were approved by the Tax Assessor of the City of Meriden.

"12. 24 Shaker Court is and has been at all times relevant designated by the Tax Assessor of the City of Meriden as 'Map/Lot: 0911-0323-0003-005A Card Number 1.'

"13. Shaker Court is and has been at all times relevant listed as a public street on the official City of Meriden Zoning Map, through and including the Map Revision dated November 14, 2013 and effective as of November 14, 2013 (the 'Zoning Map'), and is shown on the Zoning Map as a public street in the same fashion as all other public streets are shown."

[9] In their brief on appeal, the defendants failed to address squarely the litigation privilege. They raised arguments more applicable to a motion to strike such as whether the complaint fails to state a cause of action or whether the action is barred by the statute of limitations, and other arguments more properly directed to the merits of the plaintiffs' cause of action. We decline to address those arguments as they are not pertinent to an analysis of the trial court's subject matter jurisdiction.