******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# BRIARWOOD OF SILVERMINE, LLC, ET AL. *v.*
# YEW STREET PARTNERS, LLC, ET AL.
## (AC 43487)

Prescott, Cradle and DiPentima, Js.

*Syllabus*

The plaintiffs, B Co., the owner of certain real property in Norwalk, and D, the former owner of that property and the sole member of B Co., brought claims, inter alia, of adverse possession with respect to a contested area abutting property owned by the defendant, Y Co., and formerly owned by the defendant A. Following a bench trial, the trial court granted the defendants' oral motion to dismiss pursuant to the applicable rule of practice (§ 15-8). In concluding that the plaintiffs failed to establish a prima facie case of adverse possession, the court relied on its finding that D thought, erroneously, that the contested area belonged to her. Thereafter, the court, relying on its erroneous reasoning underlying its dismissal of the complaint, also rendered judgment for the defendants on their counterclaims seeking to quiet title and for trespass. On appeal, the plaintiffs claimed that the trial court erred by dismissing their complaint pursuant to Practice Book § 15-8, and by rendering judgment in favor of Y Co. on its counterclaim to quiet title, and in favor of A on her counterclaim for trespass. *Held* that the trial court erred in dismissing the plaintiffs' adverse possession claim because, when determining whether the plaintiffs had established a prima facie case, the court misapplied the law of adverse possession: the court operated under the mistaken understanding that a claimant's possession cannot be hostile if he or she believes that the contested property belongs to him or her, which represented a misunderstanding of the essential element of hostility; moreover, the court misunderstood and misapplied two additional elements of the law of adverse possession, namely, that a claimant's possession of contested property must last for an uninterrupted period of fifteen years and that a claimant's possession must be open and visible, the court having erroneously stated that the requirement that a claimant possess the contested property notoriously or hostilely is intended to allow the record owner to toll the fifteen year period of possession, the requisite fifteen year period begins when a claimant possesses the property at issue in such a way that puts the record owner on constructive notice, not when the record owner has actual knowledge of the possession, and, thus, the court's rejection of the plaintiff's claim of adverse possession was based on a misapplication of the law as to the elements of adverse possession relating to how long, and in what manner, the plaintiffs possessed the contested property; accordingly, the case was remanded for a new trial on the complaint and on the counterclaims.

Argued September 13—officially released December 14, 2021

*Procedural History*

Action, inter alia, seeking to quiet title to certain real property, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the defendants filed counterclaims; thereafter, the matter was tried to the court, *Kavanewsky, J.*; subsequently, the court granted the defendants' motion to dismiss the complaint and rendered judgment for the defendants on the complaint and in part for the defendants on their counterclaims, from which the plaintiffs appealed to this court. *Reversed in part*; *new trial.*

*Igor G. Kuperman*, for the appellants (plaintiffs).

*Richard J. Meehan*, with whom, on the brief, were *Richard T. Meehan, Jr.*, and *Caitlin R. Pfeiffer*, for the appellees (defendants).

*Opinion*

DiPENTIMA, J. In this adverse possession action, the plaintiffs, Briarwood of Silvermine, LLC (Briarwood), and Ganga Duleep, appeal from the judgment in favor of the defendants, Yew Street Partners, LLC (Yew Street), and Juliann Altieri, rendered by the trial court after it granted the defendants' motion to dismiss, which was made orally pursuant to Practice Book § 15-8,[1] after the plaintiffs had rested their case-in-chief, and on the counts of the defendants' counterclaims seeking to quiet title and for trespass. On appeal, the plaintiffs claim that the court erred by (1) dismissing their claims pursuant to § 15-8, (2) rendering judgment in favor of Yew Street on its counterclaim seeking to quiet title, and (3) rendering judgment in favor of Altieri on the count of her counterclaim for trespass. Because we conclude that the trial court incorrectly applied the law of adverse possession when determining whether the plaintiffs established a prima facie case of adverse possession, we reverse the judgment of the court.[2]

The properties at issue in this case are located at 3 Briarwood Road (Briarwood property)[3] and 14 Yew Street (Yew Street property)[4] in Norwalk. The properties share a common property line. As described by the trial court in its oral decision on the defendants' counterclaims, "the northern border of [the Briarwood property] is the southern border of [the Yew Street property]. That border is approximately 290 feet in length. The property over which the plaintiff[s] [have] asserted a claim of adverse possession is immediately north of the . . . southern border [of the Yew Street property]. More specifically, the [contested area] begins in the southeastern most corner of the [Yew Street] property, extending inward to a point approximately forty feet north of the [Yew Street property's] southern boundary, and then extending westerly for approximately 160 feet." In their complaint, the plaintiffs, as to both Altieri and Yew Street and with regard to the contested area, asserted claims of adverse possession, adverse prescription, trespass, obstruction of right to way, nuisance, absolute nuisance, and destruction of personal property, and sought to permanently enjoin Yew Street "from performing any excavation work . . . ." In response, Altieri filed a counterclaim alleging counts of trespass and intentional infliction of emotional distress, and Yew Street filed a counterclaim seeking to quiet title to the Yew Street property.

The plaintiffs presented evidence in support of their case-in-chief, that, if believed, established the following facts. See *Moutinho* v. *500 North Avenue, LLC*, 191 Conn. App. 608, 620, 216 A.3d 667 (under Practice Book § 15-8, standard is whether plaintiff presented sufficient evidence that, if believed, would establish prima facie case), cert. denied, 333 Conn. 928, 218 A.3d 68 (2019). In or around 1973, Duleep and her now deceased husband

purchased and began to reside at the Briarwood property. Duleep has continuously resided there since that time. At the time Duleep began to reside at the Briarwood property, a stone wall already had been erected. This wall ran along the right side of the Briarwood property, adjacent to Briarwood Road, and it bordered the contested area on the east side. Duleep continuously maintained and repaired the wall, installed a white stockade fence on top of it, and installed a gate. In 1973, Duleep constructed a barbecue area in the contested area. The barbecue area at that time consisted of a cement floor, chairs, and a table. Duleep continuously maintained the barbecue area.

In 1974, Duleep installed a silver wire fence on the property, which began where the stone wall ended and also bordered the contested area. Duleep continuously maintained and repaired the fence. In 1975 or 1976, Duleep installed a shed on the property, which she routinely used for gardening and welding work. Although the shed was not located in the contested area, there was a walkway affixed to it that did extend onto the contested area. In 1978, Duleep planted five fig trees—three of them in the contested area—that she cared for continuously. Duleep also had a metal structure erected to protect the fig trees, one-half of which extended into the contested area.

In approximately 1989, Duleep established a covered, open area in the contested area, which she continuously used to store metal for welding projects. In approximately that same year, Duleep replaced the silver wire fence with a taller, green wire fence. The purpose of both fences was to keep Duleep's children within the boundaries of the Briarwood property, and to keep others out. Duleep continued to maintain and to repair the fence. At some point in the 1990s, Duleep planted a vegetable garden in the contested area, which she consistently and continuously maintained.

In 1993, Duleep erected an arbor in the contested area and placed six pots in the contested area near the barbecue. She consistently and continuously used and maintained these pots. In 1993 or 1994, Duleep established a memorial garden in memory of her late husband in the contested area. The garden contained various plants, including Japanese maple trees, as well as a pergola and an ornamental bridge. The memorial garden was continuously cared for by Duleep, and was consistently used by Duleep and her family. In 1998, Duleep upgraded the barbecue station by installing a deck, an awning, stainless steel tables, a three bay sink, and three barbecue grills. In the 1990s, Duleep planted a "moon garden" on the property that partially extended into the contested area. Duleep consistently and regularly cared for the plants in this garden.

In approximately 2000, Duleep converted the covered, open area that she had used for storing metal into

a second shed, which she continuously and consistently used for potting plants and composting. Also, in approximately that same year, Duleep planted six cherry trees at the property, three of which were located in the contested area. Duleep regularly and consistently cared for the cherry trees, fertilizing, weeding, and pruning them, and harvesting their fruit. In 2008, Duleep installed motion lights in the contested area, as well as a memorial garden for a family dog that consisted of annual and perennial plants. Duleep consistently and continuously maintained the garden. In 2015 or 2016, Duleep installed an additional shed and three roofed benches in the contested area.

On August 2, 2018, Altieri removed from the contested area the potting shed, one half of the walkway, the two arbors, and one half of the metal structure above the fig trees, as well as the white stockade fence, gate and sink. Altieri also installed an orange mesh barrier on the property line between the Briarwood property and Yew Street property that prevented Duleep from accessingone half of her fig trees, the remaining one half of the metal structure above the fig trees, three of her cherry trees, part of the moon garden, the bridge, and the memorial garden.

At the conclusion of the plaintiffs' case-in-chief, and after introducing one of their own witnesses out of order, the defendants moved to dismiss the case pursuant to Practice Book § 15-8. In an oral ruling, the court granted the defendants' motion and found that the plaintiffs had failed to make out a prima facie case of adverse possession.[5] Thereafter, the trial continued and the court heard evidence on the defendants' counterclaims. After the defendants had rested their case, the court, relying on the findings that it made when it dismissed the plaintiffs' complaint, granted Yew Street's counterclaim seeking to quiet title and reserved decision as to Altieri's counterclaim that alleged counts of trespass and intentional infliction of emotional distress. In its memorandum of decision, the court addressed Altieri's counterclaim, rendering judgment in favor of Altieri on her count of trespass and in favor of the plaintiffs on her count of intentional infliction of emotional distress. In rendering judgment on the count of Altieri's counterclaim alleging trespass, the court relied on the determination it had made in its dismissal of the plaintiffs' complaint that "[the plaintiffs] had no lawful ownership or possessory interest in the [contested area of the Yew Street property]." This appeal followed.

On appeal, the plaintiffs claim that the court erred in dismissing their claim of adverse possession because the evidence that they had produced at trial established a prima facie case of adverse possession.[6] "The standard for determining whether the plaintiff has made out a prima facie case, under Practice Book § 15-8, is whether the plaintiff put forth sufficient evidence that, if

believed, would establish a prima facie case, not whether the trier of fact believes it. . . . For the court to grant the motion [for a judgment of dismissal pursuant to § 15-8], it must be of the opinion that the plaintiff has failed to make out a prima facie case. In testing the sufficiency of the evidence, the court compares the evidence with the allegations of the complaint. . . . In order to establish a prima facie case, the proponent must submit evidence, which, if credited, is sufficient to establish the fact or facts which it is adduced to prove. . . . [T]he evidence offered by the plaintiff is to be taken as true and interpreted in the light most favorable to [the plaintiff], and every reasonable inference is to be drawn in [the plaintiff's] favor." (Internal quotation marks omitted.) *Moutinho* v. *500 North Avenue, LLC*, supra, 191 Conn. App. 620.

The plaintiffs claim that the court erred in dismissing their claim of adverse possession, pursuant to Practice Book § 15-8, because the court incorrectly recited and applied the law of adverse possession, and because they did, in fact, make out a prima facie case of adverse possession. In response, the defendants argue that the court properly found that "a prima facie case for adverse possession had not been proven, and that [t]he plaintiffs' evidence simply would not permit the trier of fact to reasonably conclude that the elements of adverse . . . possession have been established . . . ." (Internal quotation marks omitted.)

"[T]o establish title by adverse possession, the claimant must oust an owner of possession and keep such owner out without interruption for fifteen years by an open, visible and exclusive possession under a claim of right with the intent to use the property as his [or her] own and without the consent of the owner." (Internal quotation marks omitted.) *Schlichting* v. *Cotter*, 109 Conn. App. 361, 364–65, 952 A.2d 73, cert. denied, 289 Conn. 944, 959 A.2d 1009 (2008). "The legal significance of the open and visible element is not . . . an inquiry into whether a record owner subjectively possessed an understanding that a claimant was attempting to claim the owner's property as his [or her] own. Rather, the open and visible element requires a fact finder to examine the extent and visibility of the claimant's use of the record owner's property so as to determine whether a reasonable owner would believe that the claimant was using that property as his or her own." Id., 368.

"Our Supreme Court has explained that [i]n general, exclusive possession can be established by acts, which at the time, considering the state of the land, comport with ownership . . . such acts as would ordinarily be exercised by an owner in appropriating land to his [or her] own use and the exclusion of others. . . . Thus, the claimant's possession need not be absolutely exclusive; it need only be a type of possession which would characterize an owner's use. . . . It is sufficient if the

acts of ownership are of such a character as to openly and publicly indicate an assumed control or use such as is consistent with the character of the premises in question." (Internal quotation marks omitted.) *Eberhart* v. *Meadow Haven, Inc.*, 111 Conn. App. 636, 641–42, 960 A.2d 1083 (2008). "[A] claimant's mistaken belief that [s]he owned the property at issue is immaterial in an action for title by adverse possession, as long as the other elements of adverse possession have been established." (Internal quotation marks omitted.) Id., 646. In other words, a "mistaken belief as to boundary does not bar [a] claim of right or negate [the] essential element of hostility" in a claim of adverse possession. Id.

In the present case, the court, in applying the law of adverse possession to the evidence presented by the plaintiffs, stated: "The plaintiffs' evidence simply would not permit the trier of fact to reasonably conclude that the elements of adverse possession have been established by clear and convincing evidence. . . . [T]here has been absolutely no showing that, prior to 2018, [Duleep] was asserting a claim of ownership to the tract in question, and that she was ousting the defendant[s]. The record clearly demonstrates the contrary. [*Duleep*] *thought, erroneously, that the subject tract belonged to her. She did not engage in any activities with a hostile or notorious intention to oust the owner.* . . . Moreover, *there has been no evidence that the defendant*[*s*] [*were*] *even aware of these activities until very recently*. That is, prior to July, 2018. Likewise, there [has] been no evidence from which a trier could find that any reasonably prudent owner would have been aware of these activities. *The requirement that the possession be done notoriously or hostilely is important. That requirement is intended to allow the record owner to effectively toll the required fifteen year period of continuous adverse possession*, and to protect her interest. And, to this court's way of thinking, and under this record, a trier could not reasonably conclude that . . . by clear and convincing evidence . . . the fifteen year period even commenced until the defendant[s] made [a] specific demand upon [Duleep] to remove the encroachments and [Duleep] refused to do so." (Emphasis added.)

The court's conclusion that the plaintiffs failed to establish a prima facie case of adverse possession is premised on two distinct, fundamental misunderstandings as to the elements of a claim of adverse possession. First, the court operated under the mistaken understanding that a claimant's possession cannot be hostile if he or she believes that the contested property belongs to him or her. Second, the court erroneously stated that the requirement that a claimant possess the contested property "notoriously or hostilely" is intended to allow the record owner to toll the fifteen year period of possession. We address each of these errors in turn.

First, in concluding that the plaintiffs failed to establish a prima facie case of adverse possession, the court found that Duleep "thought, erroneously, that the subject tract belonged to her. She did not engage in any activities with a hostile or notorious intention to oust the owner. . . . Moreover, there has been no evidence that the defendant[s] [were] even aware of these activities until very recently." The court's reliance on these findings represents a fundamental misunderstanding of an essential element of a claim of adverse possession, namely, that a claimant's possession of contested property be hostile. See *Eberhart* v. *Meadow Haven, Inc.*, supra, 111 Conn. App. 646. Under the court's stated understanding of this element, possession of contested property cannot be hostile if the claimant has operated under the belief that she owns the contested property. This understanding is clearly at odds with the law, as set forth previously in this opinion, that a "mistaken belief as to boundary does not bar [a] claim of right or negate [the] essential element of hostility" in a claim of adverse possession. Id. Accordingly, the court's judgment dismissing the plaintiffs' claim of adverse possession is based on a misapplication of the law, specifically with regard to the element of hostility.

Second, in concluding that the plaintiffs failed to establish a prima facie case of adverse possession, the court found that "there has been absolutely no showing that, prior to 2018, [Duleep] was asserting a claim of ownership to the tract in question, and that she was ousting the defendant[s]." The court further held that "[t]he requirement that the possession be done notoriously or hostilely . . . is intended to allow the record owner to effectively toll the required fifteen year period of continuous adverse possession . . . ." These statements represent a fundamental misunderstanding, and misapplication, of two additional elements of the law of adverse possession, namely, that a claimant's possession of contested property must last for an uninterrupted period of fifteen years, and that a claimant's possession must be open and visible. See *Schlichting* v. *Cotter*, supra, 109 Conn. App. 364–65.

It is well established that, for a claimant to establish title by adverse possession, the claimant must possess the contested property "without interruption for fifteen years . . . ." (Internal quotation marks omitted.) Id., 364. In the present case, the trial court was mistaken in its understanding of when the fifteen year period began. According to the court, the period does not begin until the record owner has *actual notice* of the claimant's possession of the contested property, because "[t]he requirement that the possession be done notoriously or hostilely . . . is intended to allow the record owner to effectively toll the required fifteen year period of continuous adverse possession . . . ." This construction is at odds with the law relative to the requisite

fifteen year period of possession in a claim of adverse possession.

As we have previously established, "[t]he legal significance of the open and visible element is not . . . an inquiry into whether a record owner subjectively possessed an understanding that a claimant was attempting to claim the owner's property as his [or her] own. Rather, the open and visible element requires a fact finder to examine the extent and visibility of the claimant's use of the record owner's property so as to determine *whether a reasonable owner would believe that the claimant was using that property as his or her own.*" (Emphasis added.) *Schlichting* v. *Cotter*, supra, 109 Conn. App. 368. Accordingly, the fifteen year period begins when a claimant begins to possess the property at issue in such a way that puts the record owner on *constructive notice*, not when the record owner has actual knowledge of the possession. See id. Therefore, the court's rejection of the plaintiffs' claim of adverse possession was based on a misapplication of the law as to the elements of adverse possession relating to how long, and in what manner, the plaintiffs possessed the contested property.

The judgment is reversed with respect to the complaint and with respect to the counts of the defendants' counterclaims seeking to quiet title and for trespass, and the case is remanded for a new trial on the complaint and the quiet title and trespass counts of the counterclaims; the judgment is affirmed with respect to the count of the counterclaim alleging intentional infliction of emotional distress.

In this opinion the other judges concurred.

[1] Practice Book § 15-8 provides in relevant part: "If, on the trial of any issue of fact in a civil matter tried to the court, the plaintiff has produced evidence and rested, a defendant may move for judgment of dismissal, and the judicial authority may grant such motion if the plaintiff has failed to make out a prima facie case. . . ."

[2] Because we reverse the trial court's judgment dismissing the plaintiffs' complaint, we need not address in detail the two claims challenging the court's judgment on the defendants' counterclaims. The court's decision on the counterclaims relied on its reasoning and conclusions underlying the dismissal of the complaint. Accordingly, a new trial is required on the challenged counts of the counterclaims as well.

[3] Duleep initially held title to the Briarwood property but transferred title to Briarwood in 1994. Duleep is the sole member of Briarwood.

[4] In 2009, Altieri acquired title to the Yew Street property. In 2019, Altieri transferred title to the Yew Street property to Yew Street. At all relevant times, the Yew Street property was an "unimproved vacant parcel."

[5] Although the defendants did call a witness before the plaintiffs concluded their case-in-chief, the court explicitly stated that it would not consider the testimony of that witness, or any full exhibits introduced by the defendants through that witness, in addressing the defendants' motion to dismiss.

[6] Although the plaintiffs argue that the court applied an incorrect standard in resolving the defendants' motion to dismiss pursuant to Practice Book § 15-8, we do not address that argument in light of our determination that the court's judgment, regardless of the standard applied, was based on a misapplication of the law of adverse possession.