******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JAMES NARDOZZI *v.* ARMANDO PEREZ ET AL.
(AC 44539)

Elgo, Clark and Sheldon, Js.

*Syllabus*

The plaintiff sought to recover damages and other relief for, inter alia, fraudulent misrepresentation in connection with an alleged conspiracy by the defendants, the city and two of its former employees, to fill the position of police chief in the defendant city's police department. The plaintiff, a former officer in the city's police department, had previously brought a separate action against the city alleging wrongful termination. The parties reached a settlement agreement with respect to the termination action. The plaintiff thereafter filed the complaint alleging a conspiracy, and the city filed a motion to dismiss the counts of the complaint against it, which alleged fraudulent misrepresentation during settlement negotiations and computer crime, on the basis that the claims were barred by absolute immunity under the litigation privilege. The trial court denied the motion with respect to the claim of computer crime, and the city appealed to this court. *Held* that the trial court properly denied the city's motion to dismiss the count alleging computer crime on the basis of the city's failure to establish a nexus between the allegations of that count and any activity falling within the bounds of the litigation privilege; the count did not contain any allegations with respect to communications involving the city and the conduct alleged could not reasonably be construed as stemming from the plaintiff's prior action against the city, but, rather, the allegations set forth in the count concern the mechanics of how the city's employees carried out a cheating scheme using computers, not any fraud or concealment thereof that occurred during the prior settlement negotiations.

Argued January 20—officially released May 17, 2022

*Procedural History*

Action to recover damages for, inter alia, fraudulent misrepresentation, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *Cordani, J.*, granted in part the motion to dismiss filed by the defendant city of Bridgeport, from which the defendant city of Bridgeport appealed to this court. *Affirmed.*

*James J. Healy*, for the appellant (defendant city of Bridgeport).

*Eric R. Brown*, for the appellee (plaintiff).

*Opinion*

ELGO, J. The defendant city of Bridgeport[1] appeals from the judgment of the trial court denying in part its motion to dismiss the action of the plaintiff, James Nardozzi. On appeal, the defendant claims that the court improperly denied its motion to dismiss the ninth count of the plaintiff's complaint on the ground of absolute immunity arising from the litigation privilege. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The plaintiff, a former officer within the defendant's police department, served as the defendant's assistant police chief between November, 2012, and January, 2016. In March, 2017, the plaintiff brought an action against the defendant sounding in wrongful termination (termination action). The parties reached a settlement agreement with respect to the termination action on March 4, 2020.[2]

In May, 2018, during the pendency of the termination action, the plaintiff unsuccessfully applied for the defendant's vacant chief of police position. The position was subsequently awarded to Armando Perez.

On October 13, 2020, the plaintiff filed the present complaint "alleg[ing] a conspiracy among the [defendant, Perez and David Dunn] to rig the competitive examination process to fill the position of chief of police in the [defendant's] police department from at least March, 2018, through December, 2018."[3] On November 13, 2020, the defendant filed a motion to dismiss with respect to the fourth and ninth counts of the complaint on the ground, inter alia, that the plaintiff's claims were barred by absolute immunity under the litigation privilege.[4] The defendant argued that the fourth count of the complaint, which alleged that the defendant had fraudulently withheld information concerning the cheating scheme while negotiating a settlement with the plaintiff in the termination action, implicated its conduct during prior litigation proceedings such that absolute immunity under the litigation privilege barred the plaintiff's claim. As to the ninth count, the defendant construed the plaintiff's allegations of computer crime in violation of General Statutes § 53a-251 as a "derivative statutory claim" of the fraud alleged in the fourth count, which, in the defendant's view, merited extending absolute immunity under the litigation privilege to that claim as well. The plaintiff filed an opposition to the motion to dismiss accompanied by a memorandum of law on January 4, 2021, in which he argued, inter alia, that the litigation privilege did not extend to criminally fraudulent behavior and that dismissal with respect to the fourth count of the complaint would not further the public policy aims recognized by Connecticut courts as underlying the development of the litigation privilege. The parties appeared before the court for oral argument

on the motion on January 26, 2021.

On January 27, 2021, the court granted in part the defendant's motion to dismiss. The court held that the fourth count of the plaintiff's complaint, which alleged that the defendant fraudulently failed to disclose the cheating scheme during settlement negotiations with respect to the termination action, constituted a protected communication that fell within the litigation privilege. The court further reasoned that the fourth count "is not being used to shield criminal activity" and "is instead directed to an alleged failure to provide the plaintiff with information concerning the cheating scandal during the negotiations of the settlement agreement." In order to prevent a "[direct] attack on the settlement process" of the termination action, the court concluded that the litigation privilege warranted dismissal of the fourth count.

With respect to the ninth count, however, the court denied the defendant's motion. As the court stated: "The actions allegedly taken by Dunn and Perez were not taken in the context of a judicial proceeding. Instead, Dunn and Perez are alleged to have conspired and shared information using their work computers in furtherance of their scheme to cheat in the process of hiring a new chief of police. The allegations in count nine are not dependent upon the fraud claim in count four. The actions asserted in count nine have nothing to do with the judicial proceedings of the first lawsuit. Accordingly, the litigation privilege does not apply and count nine need not be dismissed for that reason." In support of this conclusion, the court further observed that "[t]he claim asserted in count nine is also distinct from the claims raised in the [plaintiff's] first lawsuit." This appeal followed.

On appeal, the defendant claims that the court improperly denied its motion to dismiss the ninth count of the plaintiff's complaint on the ground of absolute immunity.

Our resolution of this claim is governed by the following standard of review and legal principles. "[I]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . Because a challenge to the jurisdiction of the court presents a question of law, our review of the court's legal conclusion is plenary." (Internal quotation marks omitted.) *Scholz* v. *Epstein*, 198 Conn. App. 197, 226, 232 A.3d 1155 (2020), aff'd, 341 Conn. 1, 266 A.3d 127 (2021); see also *Simms* v. *Seaman*, 308 Conn. 523, 530, 69 A.3d 880 (2013) (explaining that whether absolute immunity applies is question of law over which review is plenary).

"As the doctrine of absolute immunity concerns a [trial] court's subject matter jurisdiction . . . we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . The question before us is whether the facts as alleged in the pleadings, viewed in the light most favorable to the plaintiff, are sufficient to survive dismissal on the grounds of absolute immunity." (Internal quotation marks omitted.) *Bruno* v. *Travelers Cos.*, 172 Conn. App. 717, 724–25, 161 A.3d 630 (2017).

"Before addressing the applicability of the litigation privilege, [w]e begin our analysis with a review of [this] doctrine . . . as set forth in *Simms* v. *Seaman*, [supra, 308 Conn. 531–40]. In *Simms*, [our Supreme Court] noted that the doctrine of absolute immunity originated in response to the need to bar persons accused of crimes from suing their accusers for defamation. . . . The doctrine then developed to encompass and bar defamation claims against all participants in judicial proceedings, including judges, attorneys, parties, and witnesses. . . . We further noted that, [l]ike other jurisdictions, Connecticut has long recognized the litigation privilege, and that [t]he general rule is that defamatory words spoken upon an occasion absolutely privileged, though spoken falsely, knowingly, and with express malice, impose no liability for damages recoverable in an action in slander . . . .

"[T]he purpose of affording absolute immunity to those who provide information in connection with judicial and quasi-judicial proceedings is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements. . . . [T]he possibility of incurring the costs and inconvenience associated with defending a [retaliatory] suit might well deter a citizen with a legitimate grievance from filing a complaint. . . . Put simply, absolute immunity furthers the public policy of encouraging participation and candor in judicial and quasi-judicial proceedings. This objective would be thwarted if those persons whom the common-law doctrine [of absolute immunity] was intended to protect nevertheless faced the threat of suit. In this regard, the purpose of the absolute immunity afforded participants in judicial and quasi-judicial proceedings is the same as the purpose of the sovereign immunity enjoyed by the state. . . . As a result, courts have recognized absolute immunity as a defense in certain retaliatory civil actions in order to remove this disincentive and thus encourage citizens to come forward with complaints or to testify." (Citations omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) *Dorfman* v. *Smith*, 343 Conn. 582, 590–91, 271 A.3d 53 (2022).

"Th[e] court in *Simms*, however, explained that there

are limits to the application of the litigation privilege. . . . Specifically, the litigation privilege does not bar claims for abuse of process, vexatious litigation, and malicious prosecution. . . . This is because whether and what form of immunity applies in any given case is a matter of policy that requires a balancing of interests . . . .

"Specifically, *Simms* identified the following factors as relevant to any determination of whether policy considerations support applying absolute immunity to any particular cause of action: (1) whether the alleged conduct subverts the underlying purpose of a judicial proceeding in a similar way to how conduct constituting abuse of process and vexatious litigation subverts that underlying purpose; (2) whether the alleged conduct is similar in essential respects to defamatory statements, inasmuch as the privilege bars a defamation action; and (3) whether the alleged conduct may be adequately addressed by other available remedies. . . . Assisting in our evaluation of these factors, to the extent applicable, we have considered as persuasive whether federal courts have protected the alleged conduct pursuant to the litigation privilege. . . . These factors and considerations, however, are simply instructive, and courts must focus on the issues relevant to the competing interests in each case in light of the particular context of the case. . . . We are not required to rely exclusively or entirely on these factors, but, instead, they are useful when undertaking a careful balancing of all competing public policies implicated by the specific claim at issue and determining whether affording parties this common-law immunity from this common-law action is warranted." (Citations omitted; footnotes omitted; internal quotation marks omitted.) Id., 592–94.

When assessing whether absolute immunity under the litigation privilege applies to a given claim, this court has consistently placed great weight on whether the claim arises from communications made during the course of legal proceedings. See *Kenneson* v. *Eggert*, 196 Conn. App. 773, 785, 230 A.3d 795 (2020) (comments made during settlement conference "were made during a judicial proceeding" and "relevant to the subject matter of the ongoing litigation" such that litigation privilege blocked claim stemming therefrom); *Bruno* v. *Travelers Cos.*, supra, 172 Conn. App. 727 ("[i]t is well settled that *communications uttered or published in the course of judicial proceedings* are absolutely privileged [as] long as they are in some way pertinent to the subject of the controversy" (emphasis added; internal quotation marks omitted)); *Tyler* v. *Tatoian*, 164 Conn. App. 82, 86, 92, 137 A.3d 801 (claims of fraud against party opponent centered on misleading deposition and trial testimony are barred by the litigation privilege), cert. denied, 321 Conn. 908, 135 A.3d 710 (2016). In the absence of such a showing, this court has held that the litigation privilege should not operate to bar a plaintiff's

claim. See *Fiondella* v. *Meriden*, 186 Conn. App. 552, 562–63, 200 A.3d 196 (2018) ("Most importantly, the plaintiffs' claims focus on the alleged wrongful *conduct* engaged in by the defendants, rather than on the words uttered during a judicial proceeding. . . . We conclude that the allegations of the plaintiffs' complaint in the present case are not predicated on statements made during the course of litigation, but are based on the defendants' intentional conduct that did not occur during a judicial proceeding. The defendants, therefore, are not shielded by the litigation privilege." (Citations omitted; emphasis in original; internal quotation marks omitted.)), cert. denied, 330 Conn. 961, 199 A.3d 20 (2019).

We disagree with the defendant's assertion that the appeal before us "presents a direct application of the litigation privilege." In doing so, we find instructive the trial court's analysis of the defendant's motion with respect to the fourth count of the plaintiff's complaint, which neither party contests on appeal. As the court observed, the fourth count of the complaint explicitly pinpoints communications—the parties' discussions during settlement negotiations for the termination action—which not only pertained directly to an ongoing judicial proceeding, but directly bore on the outcome of that proceeding. It was entirely consistent with the body of appellate jurisprudence concerning the litigation privilege in this state, as established by our Supreme Court in *Simms* and elaborated on by this court in *Tyler*, *Fiondella*, and *Bruno*, for the court to determine that the defendant's statements during those negotiations were covered by the litigation privilege. Indeed, it is well settled that communications between parties during judicial proceedings are "precisely [the] type of communication that the litigation privilege was intended to protect because the benefit of encouraging [parties] to speak candidly in judicial proceedings outweighs the risk of a defendant abusing the privilege . . . ." *Tyler* v. *Tatoian*, supra, 164 Conn. App. 92.

The same cannot be said of the ninth count of the complaint. The ninth count does not contain any allegations with respect to communications involving the defendant, nor can the conduct alleged therein reasonably be construed as stemming from the plaintiff's prior action against it.[5] Instead, the allegations set forth in the ninth count concern the *mechanics* of how the defendant's employees carried out the cheating scheme using computers, not any fraud or concealment thereof that occurred during the prior settlement negotiations. At oral argument before this court, the defendant conceded that it was not aware of any authority that extended the litigation privilege to conduct independent of litigation activity. Without such authority, we see no reason to disregard this court's precedent and extend a privilege that exists expressly to foster candor during the litigation process to conduct that occurred sepa-

rately from the parties' prior litigation. See *Dorfman* v. *Smith*, supra, 342 Conn. 591.

Put simply, the defendant has failed to establish a nexus between the allegations set forth in count nine of the plaintiff's complaint and any activity that falls within the bounds of the litigation privilege. For that reason, we conclude that the court properly denied the defendant's motion to dismiss with respect to the ninth count of the plaintiff's complaint.[6]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] David Dunn and Armando Perez, two former employees of the defendant, were named as defendants in their individual capacities. Neither party is a participant in this appeal. For clarity, we refer to the city of Bridgeport as the defendant in this appeal and to Dunn and Perez by name.

[2] Despite the settlement agreement, the plaintiff's first action against the defendant remained pending until January 8, 2021.

[3] The court later found that, at or around the time of the complaint, Perez and Dunn had pleaded guilty to criminal charges that arose from "cheating in the . . . open competitive examination process that resulted in Perez becoming chief of police."

[4] Although Dunn and Perez filed their own motions to dismiss, neither motion was predicated on the ground that the litigation privilege conferred on them absolute immunity.

[5] The ninth count does incorporate prior paragraphs of the complaint which lay out a basic chronological history of the termination action. The allegations specific to the ninth count, however, do not implicate the parties' prior litigation.

[6] To the extent that the defendant disputes the merits of the plaintiff's claim, we agree with the plaintiff that such an inquiry is not appropriate at this stage of the pleadings. See *Bruno* v. *Travelers Cos.*, supra, 172 Conn. App. 724–25 ("[I]n determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . The question before us is whether the facts as alleged in the pleadings, viewed in the light most favorable to the plaintiff, are sufficient to survive dismissal on the grounds of absolute immunity." (Internal quotation marks omitted.)).