******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## SAADIA BOUAZZA *v.* GEICO GENERAL INSURANCE COMPANY
### (AC 46494)

Bright, C. J., and Moll and Cradle, Js.

*Syllabus*

The plaintiff appealed from the judgment of the trial court with respect to its dismissal of the count of her complaint alleging bad faith against the defendant insurance company. She claimed, inter alia, that the court improperly concluded that the litigation privilege applied and deprived the court of subject matter jurisdiction. *Held*:

The trial court improperly granted the defendant's motion to dismiss the plaintiff's bad faith claim for lack of subject matter jurisdiction as the allegations of bad faith for conduct that occurred outside the judicial proceeding and prior to the commencement of the underlying litigation had no connection or logical relation to any ongoing judicial proceeding and, therefore, were not covered by the litigation privilege.

Argued October 15, 2024—officially released January 21, 2025

*Procedural History*

Action to recover underinsured motorist benefits allegedly due under a certain automobile insurance policy issued by the defendant, and for other relief, brought to the Superior Court in the judicial district of New Britain, where the court, *Morgan, J.*, granted the plaintiff's request for leave to amend her complaint to add a second count alleging bad faith; thereafter, the court granted the defendant's request to bifurcate the trial, and the case was tried to the jury before *Morgan, J.*, on the first count of the complaint; verdict for the plaintiff; subsequently, the court granted the defendant's motion for remittitur; thereafter, the court granted the defendant's motion to dismiss the second count of the complaint for lack of subject matter jurisdiction; subsequently, the court rendered judgment in part for the plaintiff, from which the plaintiff appealed to this court. *Reversed in part*; *further proceedings*.

*Kevin C. Ferry*, with whom was *Monique Foley*, for the appellant (plaintiff).

*Karen L. Dowd*, with whom were *Michael A. Lanza* and, on the brief, *Joseph M. Busher, Jr.*, for the appellee (defendant).

*Opinion*

BRIGHT, C. J. The plaintiff, Saadia Bouazza, appeals from the judgment of the trial court with respect to its dismissal of her claim of bad faith against the defendant, Geico General Insurance Company. On appeal, the plaintiff claims that the trial court improperly concluded that the litigation privilege applied and deprived the court of subject matter jurisdiction and, therefore, improperly dismissed her claim of bad faith. Specifically, the plaintiff claims that (1) the litigation privilege was not applicable in this case, (2) the parties should have had an opportunity to conduct discovery prior to the court ruling on this issue, (3) the court's ruling fails to articulate how the test set forth in *Dorfman* v. *Smith*, 342 Conn. 582, 271 A.3d 53 (2022), for determining whether the litigation privilege applies, was met in this case, and (4) the court improperly considered the offer of compromise filed by the plaintiff in support of its decision. We conclude that the court improperly granted the defendant's motion to dismiss based on the litigation privilege and, accordingly, reverse in part the judgment of the trial court.[1]

The following facts, either as set forth in the court's memorandum of decision or as undisputed in the record, and procedural history are relevant to our resolution of this appeal. On February 4, 2017, the plaintiff was a passenger in a motor vehicle that was involved in an accident with another vehicle. The driver of the

---

[1] Because our resolution of this issue is dispositive of this appeal, we need not address the merits of the plaintiff's related claims.

vehicle who caused the accident (tortfeasor) was insured under a liability policy that provided coverage of $20,000 per person/$40,000 per accident. The plaintiff settled with the tortfeasor for all available limits of coverage under the tortfeasor's policy. At the time of the accident, the plaintiff was insured under an automobile liability policy issued by the defendant that provided uninsured and underinsured motorist benefits in the amount of $100,000 per person/$300,000 per occurrence.

On November 8, 2019, the plaintiff commenced a single count action against the defendant seeking money damages under her uninsured/underinsured motorist policy with the defendant. On June 30, 2020, the plaintiff filed an offer of compromise indicating that she was willing to settle her claims against the defendant for $50,000. This offer was not accepted by the defendant. On April 5, 2022, the defendant filed an offer of compromise in the amount of $20,000. This offer was not accepted by the plaintiff.

On May 3, 2022, the day before jury selection was scheduled to commence, the plaintiff filed a request for leave to file an amended complaint seeking to add a second count alleging bad faith. The court bifurcated the trial, allowing the underinsured motorist claim to proceed to trial as scheduled, and thereafter permitted the plaintiff to amend her complaint over the defendant's objection. On May 13, 2022, the jury returned a verdict in favor of the plaintiff in the amount of $2,262,000. On July 12, 2022, the trial court granted the defendant's motion for remittitur, reducing the verdict to $79,000 in accordance with the express terms of the underinsured motorist policy and General Statutes § 38a-336 (b).

On August 22, 2022, the defendant filed a motion to dismiss the second count of the plaintiff's complaint

for lack of subject matter jurisdiction. In its motion and accompanying memorandum of law, the defendant argued that it was entitled to immunity from suit with respect to the plaintiff's claim for breach of the implied covenant of good faith and fair dealing under the litigation privilege. On October 19, 2022, the plaintiff filed an objection to the defendant's motion to dismiss in which she contended that the litigation privilege did not apply and that she properly had raised allegations of bad faith in count two of her complaint.

On March 27, 2023, following a hearing, the trial court granted the defendant's motion. In its decision, the court stated that the allegations in the second count of the amended complaint "all stem from the defendant's communications and conduct in negotiating the settlement of the plaintiff's [underinsured motorist] claim in the course of and related to a judicial proceeding. Thus, the plaintiff's claim does not challenge the purpose of any underlying litigation, but rather the defendant's conduct in negotiating the settlement of the plaintiff's [underinsured motorist] claim." Accordingly, the court concluded that, pursuant to *Dorfman* v. *Smith*, supra, 342 Conn. 582, the litigation privilege provided the defendant with absolute immunity from the plaintiff's claim of bad faith/breach of the implied covenant of good faith and fair dealing.[2] Following the denial of the plaintiff's motion to reargue, the plaintiff filed the present appeal.[3]

On appeal, the plaintiff claims that the court improperly granted the defendant's motion to dismiss on the

---

[2] "'[Our Supreme Court] has tended to use the terms "bad faith," "lack of good faith" and "breach of the covenant of good faith and fair dealing" interchangeably' . . . and applies the same analysis to claims brought under each of these terms." (Citation omitted.) *Capstone Building Corp.* v. *American Motorists Ins. Co.*, 308 Conn. 760, 794 n.34, 67 A.3d 961 (2013).

[3] The trial court also denied the plaintiff's motions for articulation asking the trial court to articulate and to clarify its ruling granting the defendant's motion to dismiss. The plaintiff did not seek review in this court of the trial court's denial.

ground that it lacked subject matter jurisdiction. Specifically, the plaintiff contends that, on the basis of the facts alleged in the second count of the amended complaint, the litigation privilege does not apply and, therefore, the defendant is not immune from the plaintiff's claim of bad faith. The plaintiff argues, as she did in her opposition to the motion to dismiss, that her claims are premised on an abuse of process, an exemption to the litigation privilege. She also contends that she has properly raised a claim of bad faith, outside of the litigation privilege context, based on the allegations in the amended complaint regarding the defendant's dilatory and unscrupulous behavior in the handling of her claim. In response, the defendant contends that the trial court correctly concluded that the plaintiff's claim of bad faith is barred by the litigation privilege.[4]

We initially set forth the standard of review applicable to the plaintiff's claim on appeal. "The litigation privilege provides absolute immunity from suit and, therefore, implicates the court's subject matter jurisdiction. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it . . . must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . Whether the litigation privilege applies in a given case is a question of law subject to de

---

[4] In its brief, the defendant has moved to strike pages 284 through 395 of the plaintiff's appendix, as well as any discussion in the plaintiff's brief regarding these pages, as these pages include items such as a deposition transcript, medical records, and a medical special damages summary, which were not submitted to the trial court in connection with the motion to dismiss or referenced in the plaintiff's opposition to the motion to dismiss. Because we limit our review to the allegations in the plaintiff's amended complaint that the trial court considered in ruling on the motion to dismiss, we take no action with regard to the motion to strike raised in the defendant's brief. We likewise take no action with regard to the defendant's motion to strike statements of fact in the plaintiff's brief that are not supported by references to the record.

novo review. . . . When deciding whether the privilege applies, every presumption in favor of the court's jurisdiction should be indulged. . . .

"The litigation privilege is a long-standing [common-law] rule that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy. . . . The privilege . . . applies to every step of the proceeding until [its] final disposition . . . including to statements made in pleadings or other documents prepared in connection with [the] proceeding. . . . The privilege originated in response to the need to bar persons accused of crimes from suing their accusers for defamation. . . . [It] then developed to encompass and bar defamation claims against all participants in judicial proceedings, including judges, attorneys, parties, and witnesses. . . . Subsequently, the privilege was expanded to bar a variety of retaliatory civil claims arising from communications or communicative acts occurring in the course of a judicial or quasi-judicial proceeding, including, but not limited to, claims for tortious interference, intentional infliction of emotional distress, fraud, and violations of [the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.] . . .

"The policy underlying the [litigation] privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements. . . . Participants in a judicial process must be able to testify or otherwise take part without being hampered by fear of defamation [or other retaliatory litigation]. . . . [In] determining whether a statement is made in the course of a judicial proceeding . . . the court must decide as a matter of law whether the [alleged statement is] sufficiently relevant to the

issues involved in . . . [the] proceeding, so as to qualify for the privilege. . . . The test for relevancy is generous, and judicial proceeding has been defined liberally to encompass much more than civil litigation or criminal trials. . . .

"[Our Supreme Court] has recognized a distinction between attempting to impose liability [on] a participant in a judicial proceeding for the words used therein and attempting to impose liability [on] a litigant for his improper use of the judicial system itself. . . . In this regard, we have refused to apply absolute immunity to causes of action alleging the improper use of the judicial system. . . . Thus, we have held that the litigation privilege does not bar claims for abuse of process, vexatious litigation, and malicious prosecution. . . . We have done so because these claims seek to hold an individual liable for . . . the improper use of the judicial process for an illegitimate purpose, namely, to inflict injury [on] another individual in the form of unfounded actions. . . . We have treated these claims differently in part because of restraints built into [them] by virtue of [their] stringent requirements." (Citations omitted; internal quotation marks omitted.) *Deutsche Bank AG* v. *Vik*, 349 Conn. 120, 136–39, 314 A.3d 583 (2024).

Mindful of the foregoing principles, we consider whether the trial court in the present case properly concluded that the litigation privilege provided the defendant with absolute immunity from the plaintiff's claim of bad faith. In considering this issue, we initially note that our Supreme Court has "recognize[d] an independent cause of action in tort arising from an insurer's common law duty of good faith. . . . An implied covenant of good faith and fair dealing has been applied by this court in a variety of contractual relationships, including . . . insurance contracts . . . ." (Citations

omitted; internal quotation marks omitted.) *Buckman* v. *People Express, Inc.*, 205 Conn. 166, 170, 530 A.2d 596 (1987); see also *Capstone Building Corp.* v. *American Motorists Ins. Co.*, 308 Conn. 760, 794 n.33, 67 A.3d 961 (2013) ("[a]n independent cause of action for a bad faith denial of policy benefits is well established").

In *Dorfman* v. *Smith*, supra, 342 Conn. 582, our Supreme Court considered the scope of the litigation privilege in relation to alleged misconduct by an insurance company. Id., 585. The court in that case concluded that the plaintiff's action against her insurance company, Liberty Mutual Fire Insurance Company (Liberty Mutual), to compel payment of underinsured motorist benefits, in which she alleged, inter alia, that Liberty Mutual had breached the implied covenant of good faith and fair dealing, was barred by the litigation privilege.[5] Id., 585–86. In granting the defendant's motion to dismiss in the present case, the trial court concluded that "[t]his case falls squarely within the majority's decision in *Dorfman*."[6] Our analysis, therefore, must begin with a review of the facts alleged in *Dorfman* and the Supreme Court's conclusion that the plaintiff's claims in that case were barred by the litigation privilege. We also must consider *Dorfman* in light of our Supreme Court's subsequent decision in *Deutsche Bank AG* v. *Vik*, supra, 349 Conn. 120, in which it declined to apply the litigation

---

[5] In *Dorfman* v. *Liberty Mutual Fire Ins. Co.*, 227 Conn. App. 347, 322 A.3d 331 (2024), this court later determined that the plaintiff's allegations in a subsequent lawsuit concerning Liberty Mutual's alleged bad faith pleading in *Dorfman* v. *Smith*, supra, 342 Conn. 582, properly asserted a cause of action for vexatious litigation under the common law and pursuant to General Statutes § 52-568. See *Dorfman* v. *Liberty Mutual Fire Ins. Co.*, supra, 406. Thus, this court "reject[ed] the defendant's claim that an action for vexatious litigation, whether under the common law or § 52-568, cannot be based on allegedly false answers to a complaint in a prior action." Id.

[6] Justice Ecker authored a separate opinion concurring in part and dissenting in part from the majority opinion. See *Dorfman* v. *Smith*, supra, 342 Conn. 620 (*Ecker, J.*, dissenting).

privilege to conduct that occurred outside of a judicial proceeding.[7] Id., 140–41.

In *Dorfman*, the plaintiff alleged that she was involved in a motor vehicle accident with an underinsured tortfeasor, Joscelyn M. Smith. See *Dorfman* v. *Smith*, supra, 342 Conn. 586. The plaintiff thereafter filed a claim with Liberty Mutual under the underinsured motorist provision of her insurance contract. Id. As part of its investigation into the claim, Liberty Mutual acquired the police report regarding the collision, the plaintiff's recorded statement and the recorded statement of a witness to the accident who was not listed in the police report; these materials all noted Smith's failure to stop at a stop sign. Id. Liberty Mutual's investigation into this claim revealed that Smith was 100 percent liable for the accident, a fact that was noted in the claim file. Id.

After Liberty Mutual notified the plaintiff that she was required to submit an affidavit of no excess insurance, the plaintiff commenced a breach of contract action against Liberty Mutual to compel payment of the underinsured motorist benefits. Id., 586–87. Liberty Mutual hired attorneys to represent it in the action but deliberately withheld from the attorneys its file notes regarding the claim as well as the name, existence, and recorded statement of the witness, even though it knew that this information was necessary for the attorneys to prepare accurate responses to the plaintiff's complaint and discovery requests. Id., 587. Liberty Mutual pleaded in its answer to the complaint that it denied or did not have sufficient information to admit the plaintiff's allegations regarding the cause of the collision and

---

[7] *Deutsche Bank AG* v. *Vik*, supra, 349 Conn. 120, was decided by our Supreme Court after the trial court in the present case issued its decision dismissing count two of the plaintiff's amended complaint. It is cited by the plaintiff in her reply brief.

her injuries and asserted a special defense of contributory negligence, even though it knew this to be false. Id. Liberty Mutual also provided false responses to the plaintiff's discovery requests, including that it did not know of the existence of any witnesses not listed in the police report and whether any recorded statement existed. Id.

Upon learning of Liberty Mutual's conduct,[8] the trial court granted the plaintiff permission to amend her complaint to include, inter alia, a claim of breach of the implied covenant of good faith and fair dealing. Id., 588. The trial court thereafter granted Liberty Mutual's motion to dismiss the breach of the implied covenant of good faith and fair dealing count, concluding that, because the claim was predicated on communications and statements made in the course of and related to a judicial proceeding, the litigation privilege applied and barred this claim. Id., 589.

On appeal, the plaintiff argued that her claim was not barred by the litigation privilege because it was premised on Liberty Mutual's improper use of the courts, which was the functional equivalent of a claim of vexatious litigation, to which absolute immunity does not apply. Id., 594. The plaintiff further contended that her claim for breach of the implied covenant of good faith and fair dealing alleged conduct showing that Liberty Mutual systematically abused the judicial process and thereby improperly used the courts. Id., 596. In considering whether the plaintiff's claim was more akin

---

[8] Liberty Mutual's corporate designee admitted at a deposition that " '[t]here was no basis in fact for [Liberty Mutual's] accusation that [the plaintiff] was in any way responsible for causing the accident' and that [Liberty Mutual] 'had known that there was nothing [the plaintiff] could have done to avoid the accident . . . .' " *Dorfman* v. *Smith*, supra, 342 Conn. 587–88. The designee also admitted that Liberty Mutual was aware that there was a witness to the accident who had made a recorded statement but failed to disclose this information in its interrogatory responses. Id., 588.

to claims of vexatious litigation[9] and abuse of process,[10] to which the court had not afforded absolute immunity, or to claims of fraud and defamation, to which the court had afforded absolute immunity, our Supreme Court stated that "[w]e have refused to apply absolute immunity to causes of action alleging the improper use of the judicial system but have applied immunity to claims premised on factual allegations that challenge the defendant's conduct in a properly brought judicial proceeding when the cause of action does not require the plaintiff to challenge either the purpose of the underlying litigation or the purpose of a particular judicial procedure." (Internal quotation marks omitted.) Id. For immunity to apply, the court explained, "it is not enough for the plaintiff to allege that the misconduct at issue constituted an improper use of the judicial system, but, rather, the cause of action itself must challenge the *purpose* of the underlying litigation or litigation conduct." (Emphasis in original.) Id., 596–97.

The court next indicated that, to determine the purpose of an underlying judicial proceeding, it is necessary to look at the elements of the claim itself. In this

---

[9] "In Connecticut, the cause of action for vexatious litigation exists both at common law and pursuant to statute. . . . [T]o establish a claim for vexatious litigation at common law, one must prove want of probable cause, malice and a termination of suit in the plaintiff's favor. . . . The statutory cause of action for vexatious litigation exists under . . . § 52-568, and differs from a common-law action only in that a finding of malice is not an essential element, but will serve as a basis for higher damages." (Internal quotation marks omitted.) *Northeast Building Supply, LLC* v. *Morrill*, 224 Conn. App. 137, 150, 312 A.3d 138 (2024).

[10] "An action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed. . . . Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, § 682, emphasizes that the gravamen of the action for abuse of process is the use of a legal process . . . against another *primarily* to accomplish a purpose for which it is not designed . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Mozzochi* v. *Beck*, 204 Conn. 490, 494, 529 A.2d 171 (1987).

regard, it noted that "[t]o constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." (Internal quotation marks omitted.) Id., 597. Upon review of these elements, the court concluded that the plaintiff's claim did not challenge the purpose of any underlying litigation. Id. It challenged, rather, Liberty Mutual's conduct in defending against her underinsured motorist claim. Id. After examining the case law and relevant public policies in light of the allegations in the plaintiff's complaint, the Supreme Court concluded that, because the "plaintiff's claim for breach of the implied covenant of good faith and fair dealing [was] premised on false communications, [did] not challenge the purpose underlying a judicial proceeding, [was] more akin to a claim for defamation or fraud, and may be addressed by other remedies . . . the trial court properly [had] applied the litigation privilege." Id., 612.[11]

---

[11] In its decision, the court noted that, unlike a claim of vexatious litigation or abuse of process, a claim of breach of the implied covenant of good faith and fair dealing in general does not challenge the purpose of an underlying judicial proceeding; see *Dorfman* v. *Smith*, supra, 342 Conn. 597–98; and that the plaintiff's claim was "not designed to hold an individual liable for the improper use of the judicial system but, rather, [was] designed to hold an individual liable for improper conduct in fulfilling contractual obligations." Id., 598. The court stated that the plaintiff's claim "[had] more in common with a defamation claim than with an abuse of process, vexatious litigation, or malicious prosecution claim, thereby militating in favor of applying the privilege." Id., 600.

The court in *Dorfman* further noted that, in the context of a claim of breach of the implied covenant of good faith and fair dealing, "[b]ad faith in general implies . . . actual or constructive *fraud*, or a design to *mislead or deceive* another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." (Emphasis in original; internal quotation marks omitted.) Id., 606. The court stated that this definition of bad faith demonstrated that the plaintiff's claim was more akin to a claim of fraud, to which the litigation privilege applies, stating:

The Supreme Court considered the application of the litigation privilege again in *Deutsche Bank AG* v. *Vik*, supra, 349 Conn. 120, an action brought by the plaintiff, Deutsche Bank AG (Deutsche Bank), against the defendants, Alexander Vik (Alexander) and his daughter Caroline Vik (Caroline), seeking damages resulting from its efforts to collect an approximately $243 million foreign judgment from a nonparty, Sebastian Holdings, Inc. (SHI), which the plaintiff claimed was a shell company controlled by Alexander. Id., 123. The plaintiff alleged tortious interference with a business expectancy and violation of CUTPA based on the defendants' alleged efforts to interfere with the order of a Norwegian court requiring the sale of SHI's shares in a Norwegian software company (Confirmit) in partial satisfaction of SHI's debt to the plaintiff. Id. The trial court denied the defendants' motion to dismiss the action, in which they argued that the action was barred by the litigation privilege. Id. This court reversed the judgment of the trial court and directed that the action be dismissed in its entirety. Id. Upon the granting of Deutsche Bank's petition for certification to appeal, our Supreme Court reversed the judgment of this court, concluding that Deutsche Bank's action was not barred by the litigation privilege. Id., 124.

In its decision, the Supreme Court, citing *Dorfman* v. *Smith*, supra, 342 Conn. 597 n.6, noted that "[t]he litigation privilege does not apply to conduct [or communications] not made in the course of a judicial proceeding . . . ." (Internal quotation marks omitted.) *Deutsche Bank AG* v. *Vik*, supra, 349 Conn. 140. It further stated in relevant part that "[t]he complaint describes a multifaceted campaign by Alexander,

"If a claim of breach of the implied covenant of good faith and fair dealing may be premised on fraud in relation to a contract, and claims of fraud are afforded absolute immunity, it is logical that the immunity likewise extends to claims of breach of the implied covenant of good faith and fair dealing." Id.

undertaken between 2016 and 2020, to prevent the sale of the Confirmit shares or, failing that, to depress the sale price of the shares. As the plaintiff argues, many of the tactics allegedly employed by him to accomplish these goals *occurred outside the context of any judicial proceeding and are therefore not covered by the litigation privilege. . . .* The claimed extrajudicial tactics include installing family members and other close associates on Confirmit's board of directors, allegedly to deplete the company's assets; submitting a disingenuous bid to acquire the Confirmit shares, allegedly to deter other bidders; coordinating with [his father] to have the plaintiff's execution lien deregistered from the VPS registry, allegedly to disrupt the sales process; and forging and backdating a document purporting to grant Caroline a right of first refusal to acquire the Confirmit shares, allegedly to inject doubt and uncertainty into the sales process, to deter bidders, and to drive down the sale price. *Because these activities have no connection or logical relation to any ongoing judicial proceeding, they are not covered by the litigation privilege.*" (Citations omitted; emphasis added.) Id., 140.

With this background in mind, we now consider the allegations of bad faith as set forth in the second count of the plaintiff's amended complaint in the present case to determine whether they are barred by the litigation privilege. The second count incorporated paragraphs 1 through 22 of the underinsured motorist claim set forth in the first count. The first count set forth allegations regarding the accident on February 4, 2017, the negligence of the tortfeasor in causing the accident and the injuries that the plaintiff sustained in the accident, as well as the damages incurred as a result of the accident. It also contained allegations that the plaintiff had settled for all available limits of coverage against the tortfeasor, that the settlement was inadequate to compensate the plaintiff, and that her injuries and losses were the

responsibility of the defendant pursuant to an automobile liability policy issued by the defendant that provided uninsured and underinsured motorist benefits.

After incorporating these allegations, the second count added new allegations of bad faith on the part of the defendant.[12] The new allegations included the

[12] The second count contained the following new allegations:

"27. On or about June 30, 2020, the plaintiff . . . filed an offer of compromise for $50,000. That offer was not accepted by [the defendant] within thirty days as [prescribed] by law.

"28. On or about February 17, 2021, the plaintiff . . . sent the [defendant's] counsel a letter notifying it that the plaintiff's claims far exceed the defendant's policy limits and her intent to pursue bad faith as well as recover all amounts due and owe[d] her above the policy pursuant to law.

"29. On various dates thereafter from February 17, 2021, through the present, the plaintiff . . . continually attempted to receive full payment for the plaintiff's underinsured motorist claim.

"30. To date, the defendant has failed, refused and/or neglected to make a reasonable offer on the plaintiff's underlying underinsured motorist claim all for cost saving measures to save money to the detriment of its unsured.

"31. The plaintiff made diligent efforts to provide [the defendant] with all of the medical records, bills, reports and other documentation the defendant requested in order to properly evaluate the plaintiff's claims. Upon information and belief, the plaintiff complied with all of the defendant's requests for the information sought to evaluate the plaintiff's claims.

"32. Despite repeated demand, [the defendant] repeatedly refused to offer a reasonable sum. This is despite the plaintiff's repeated efforts to continually furnish the defendant with all of the materials requested.

"33. On or about November 20, 2019, [the plaintiff] was forced to file a formal lawsuit against [the defendant].

"34. At all times herein, [the defendant] has intentionally refused to promptly adjust the [plaintiff's] claims.

"35. At all times herein, [the defendant] evaluated the plaintiff's claims in the same manner and method it would adjust all claims, despite its contractual obligations to the plaintiff, to deal with her in a full faith and fair dealing as an insured under its policy.

"36. At all times herein, [the defendant] delayed the resolution of the [plaintiff's] claims and harassed her in an effort to deny full liability for this matter.

"37. At all times herein, [the defendant] has refused to settle the [plaintiff's] claims for a reasonable value.

"38. At all times herein, [the defendant] has refused to negotiate the [plaintiff's] claims in good faith when the policy clearly provided coverage under the facts of these claims and instead is offering less than a fair value based on unjustified positions.

defendant's refusal to accept the plaintiff's offer of compromise filed on June 30, 2020, and the defendant's refusal to make a reasonable offer on the plaintiff's underinsured motorist claim, despite repeated demands and the plaintiff's diligent efforts to provide the defendant with all of the medical records, bills, reports, and other documentation that the defendant requested in order to properly evaluate the plaintiff's claims. This count alleged that, on November 20, 2019, the plaintiff was forced to file a formal lawsuit against the defendant.

In paragraphs 34 through 39 of the amended complaint, the plaintiff alleged that, "[*a*]*t all times herein*"; (emphasis added); the defendant intentionally refused to promptly adjust the plaintiff's claims, evaluated the plaintiff's claims in the same manner that it would adjust all claims, despite its contractual obligations to her as an insured under the policy, delayed the resolution of the plaintiff's claims and harassed her in an effort to deny full liability for this matter, refused to settle the plaintiff's claims for a reasonable value, refused to negotiate the plaintiff's claims in good faith when the policy clearly provided coverage and offered less than a fair value based on unjustified positions, and delayed resolution of the plaintiff's claims and harassed her in an effort to force her to accept less than was fair and to profit from the plaintiff's vulnerable position. Paragraph 40 of the amended complaint alleged that "[*b*]*y the aforesaid conduct*, [the defendant] has breached an implied contractual covenant of good faith and fair dealing, contrary to [its] obligations to deal with the plaintiff in a fair and reasonable manner." (Emphasis added.)

---

"39. At all times herein, [the defendant] delayed the resolution of the plaintiff's claims and harassed the plaintiff in an effort to force her to accept a sum less than was fair in settlement of her claim and to profit from the plaintiff's vulnerable position.

"40. By the aforesaid conduct, [the defendant] has breached an implied contractual covenant of good faith and fair dealing, contrary to [its] obligations to deal with the plaintiff in a fair and reasonable manner."

We agree with the trial court that *some* of these allegations relate to the defendant's communications and conduct made during a judicial proceeding, such as the allegations pertaining to the defendant's refusals to accept the plaintiff's offer of compromise[13] and to make a reasonable offer on the plaintiff's underlying underinsured motorist claim once the litigation had commenced. As in *Dorfman*, we conclude that these allegations challenge the defendant's conduct in defending against the plaintiff's underinsured motorist claim and do not challenge the purpose of any underlying litigation. See *Dorfman* v. *Smith*, supra, 342 Conn. 597. Pursuant to *Dorfman*, therefore, we conclude that any such conduct and communications made during the course of a judicial proceeding are protected by the litigation privilege.

We disagree, however, that *all* of the allegations in the second count, construed in the light most favorable to the plaintiff, involved conduct or communications made during the course of a judicial proceeding. Although we recognize that the litigation privilege "extends beyond statements made during a judicial proceeding to preparatory communications that may be directed to the goal of the proceeding"; (internal quotation marks omitted) *Kenneson* v. *Eggert*, 196 Conn. App. 773, 783, 230 A.3d 795 (2020); it is not clear that the allegation regarding the defendant's refusal to adjust the plaintiff's claim promptly, or the allegation regarding the defendant's evaluation of the plaintiff's claim in the same

[13] General Statutes § 52-192a, the statute governing offers of compromise by a plaintiff, provides in relevant part: "(a) Except as provided in subsection (b) of this section, *after commencement of any civil action* based upon contract or seeking the recovery of money damages, whether or not other relief is sought, the plaintiff may, not earlier than one hundred eighty days after service of process is made upon the defendant in such action but not later than thirty days before trial, file with the clerk of the court a written offer of compromise signed by the plaintiff or the plaintiff's attorney, directed to the defendant or the defendant's attorney, offering to settle the claim underlying the action for a sum certain. . . ." (Emphasis added.)

manner that it would adjust all claims, involved conduct during the course of a judicial proceeding. The same is true for the allegations that the defendant delayed resolution of the plaintiff's claim and harassed her in an effort to force her to accept a sum less than was fair and to profit from the plaintiff's vulnerable position. Rather, these allegations extend beyond communications made during litigation and include allegations pertaining to the defendant's conduct during the claim evaluation process prior to the initiation of the present action. This conclusion is further supported by the allegation in paragraph 33 of the amended complaint that the plaintiff "was forced to file" the present action, which implies that she was forced to do so due to the defendant's prelitigation bad faith.

Furthermore, it is difficult to discern whether the reference to "[a]t all times herein" in paragraphs 34 through 39 of the amended complaint and the "aforesaid conduct" referenced in paragraph 40 of the amended complaint refer to conduct that took place as part of a judicial proceeding or if the allegations refer to conduct that occurred prior to the commencement of the judicial proceeding. This is so because the second count of the amended complaint incorporates paragraphs 1 through 22 of the underinsured motorist claim set forth in the first count, in which the plaintiff alleges facts that occurred prior to the commencement of the underlying litigation. Viewed in this light, we disagree with the defendant that the plaintiff's allegations are grounded solely in a disagreement that occurred during the litigation over settlement negotiations and fair value. Instead, construing the allegations in the manner most favorable to the plaintiff, and keeping in mind that every presumption in favor of the court's jurisdiction should be indulged; see *Deutsche Bank AG* v. *Vik*, supra, 349 Conn. 137; we conclude that the allegations regarding the defendant's refusal to adjust the plaintiff's claim promptly

and the allegation regarding the defendant's evaluation of the plaintiff's claim in the same manner that it would adjust all other claims, as well as the allegations regarding the defendant's delay and harassment of the plaintiff, "have no connection or logical relation to any ongoing judicial proceeding [and, therefore] are not covered by the litigation privilege." Id., 140; see also *Nardozzi* v. *Perez*, 212 Conn. App. 546, 555, 276 A.3d 441 (2022) ("we see no reason to disregard this court's precedent and extend a privilege that exists expressly to foster candor during the litigation process to conduct that occurred separately from the parties' . . . litigation"); *Fiondella* v. *Meriden*, 186 Conn. App. 552, 562–63, 200 A.3d 196 (2018) (litigation privilege is not applicable to allegations not predicated on statements made during course of litigation but based on defendants' intentional conduct that did not occur during judicial proceeding), cert. denied, 330 Conn. 961, 199 A.3d 20 (2019).

Finally, in concluding that the plaintiff's allegations regarding the breach of the implied covenant of good faith and fair dealing were barred by the litigation privilege in *Dorfman* v. *Smith*, supra, 342 Conn. 582, the court made clear that the plaintiff's claim was premised on the communication of false statements *during litigation.* The court stated that "the plaintiff never argued to the trial court—and has not argued before this court—that she premised any of her claims on conduct that occurred outside the course of a judicial proceeding. Rather, she consistently has argued that, *during the underlying litigation,* the defendant made recovery as difficult as possible and improperly used the courts to avoid paying her the full amount of benefits owed." (Emphasis added.) Id., 597 n.6. The court further stated that "[t]he plaintiff's claim for breach of the implied covenant of good faith and fair dealing, like a defamation claim, is premised on the communication of false statements *during litigation*"; (emphasis added) id.,

600; and that "[t]he plaintiff clearly premises her claim in this action on false statements made in pleadings and other documents filed in relation to the breach of contract claim in the underlying action." Id., 601.

In the present case, by contrast, in addition to claiming that her allegations were premised on an abuse of process, the plaintiff argued in her opposition to the defendant's motion to dismiss that she had "properly brought a bad faith claim for the invidious motive and actions of the defendant in withholding the plaintiff's funds rightfully due and owing her under the policy of insurance with the defendant."[14] In her brief to this court, the plaintiff points out that this case does not involve improper communications, pleadings or conduct throughout trial but, rather, "systemic abuse of the plaintiff's claim, *forcing her into the judicial system* and all the way through an arduous trial."[15] (Emphasis

[14] The plaintiff also contended, in part, that "[the defendant] deliberately employed delay tactics and refused to expeditiously evaluate her claims despite knowledge that she had suffered permanent injuries and would need substantial future care . . . . Its deliberate delay in adjusting the claim followed by numerous attempts to offer the plaintiff less than the value rightly due and owed to her under the policy she paid premiums to the defendant for were based on money saving/profit maximizing and self-interested motives. These actions by the defendant constitute the ways the defendant breached its covenant of fair dealing to its insured, the plaintiff."

[15] In *Dorfman* v. *Smith*, supra, 342 Conn. 582, the plaintiff similarly claimed that the defendant's conduct, inter alia, "compelled the plaintiff to resort to litigation to obtain her benefits . . . ." Id., 595. The conduct referenced in *Dorfman*, however, was clearly related to the underlying judicial proceeding. Specifically, the court stated: "The plaintiff alleged that the defendant falsely responded to the complaint, including by asserting a special defense the defendant knew had no basis in fact, as well as falsely responding to interrogatories and discovery requests. As a result, [the plaintiff alleged that] the defendant used intentional misstatements, intentional misrepresentations, intentionally deceptive answers, and *violated established rules of conduct in litigation*, and knowingly and intentionally engaged in *dishonest and sinister litigation practices* by taking legal positions that were without factual support in order to further frustrate [the plaintiff's] ability to receive benefits due [to her] under her contract." (Emphasis added; internal quotation marks omitted.) Id.

added.) She contends that she "has properly raised a claim for bad faith, outside of the litigation privilege context, based on the allegations surrounding the defendant's dilatory and unscrupulous behavior in the handling of her claim." Unlike the plaintiff in *Dorfman*, therefore, the plaintiff in the present case clearly argued, in both the trial court and to this court, that the allegations of bad faith involved conduct that occurred outside the course of a judicial proceeding.

In light of the foregoing and considering the applicable case law and policies underlying the litigation privilege, we disagree with the trial court's determination that, with regard to the allegations of bad faith for conduct that occurred outside the judicial proceeding and prior to the commencement of this litigation, the defendant was immune from this action. We conclude, rather, that these allegations are not covered by the litigation privilege and, therefore, that the trial court improperly granted the defendant's motion to dismiss for lack of subject matter jurisdiction.

The judgment is reversed only with respect to the granting of the defendant's motion to dismiss and the case is remanded for further proceedings according to law; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.